Present:  All the Justices

THE UNINSURED EMPLOYER'S FUND
                                              OPINION BY
v.  Record No. 970477           CHIEF JUSTICE HARRY L. CARRICO
                                            January 9, 1998
CLARA ANNETTE THRUSH, ET AL.

              FROM THE COURT OF APPEALS OF VIRGINIA


     This is a workers' compensation case involving an employee
who was hired to work only one day for a total wage of $42 and
was killed after working a portion of the day.  The case has
twice been before the Workers' Compensation Commission (the
Commission) and the Court of Appeals.  In the second round, the
Commission awarded the employee's widow and minor child
compensation at a weekly rate of $160, based upon an average
weekly wage of $240.  The Court of Appeals affirmed the award.
Finding that the case involves matters of significant
precedential value, we awarded an appeal to the Uninsured
Employer's Fund (the Fund), which became a party to the
proceeding because the employer was uninsured.

     The employee, Brian Lee Thrush (Brian), a pipelayer by
trade, lived and worked in Florida.  However, on December 8,
1991, he was in Virginia for a court appearance the next day,
planning to return to Florida immediately afterward.

     Reichert Painting Company, a sole proprietorship owned by
Nancy Reichert (Reichert), contracted with Cavalier Ford, Inc. of
Chesapeake to paint light poles on Cavalier's car lot.  Needing
extra help, Reichert hired Brian, a part-time painter, to work
seven hours on December 8 at $6 per hour.  After about an hour
and a half of painting, Brian apparently fell from a "mobil[e]

scaffold," came into contact with a high-voltage electric line, and died a short time later of "[s]hock due to electrocution."

On December 7, 1993, Brian's widow, Clara Annette Thrush, and his minor child, Teauna Mae (collectively, Thrush), filed with the Commission a claim for death benefits. A deputy commissioner entered an award in favor of the widow and child for death benefits of $196 per week, based upon an average weekly wage of $294, derived from the formula $6 per hour x seven hours = $42 per day x seven days = $294 per week. Upon the Fund's request for review, the full Commission affirmed the award.

The Fund appealed the award to the Court of Appeals (Thrush I). In an unpublished memorandum opinion, the Court of Appeals reversed the Commission's decision, stating that "a work week of forty-nine hours was inexplicably adopted by the commission, resulting in a purely conjectural calculation of [Brian's] average weekly wage." The Court of Appeals remanded the case to the Commission "for redetermination of the award in accordance with an average weekly wage based upon a forty-hour work week at $6 per hour."

Upon remand, the Commission interpreted the Court of Appeals' action as a "remand . . . with directions to find that the average weekly wage of the deceased employee was $240." Accordingly, the Commission entered an award in the amount of $160 per week, based upon an average weekly wage of $240, derived from the formula $6 per hour x forty hours per week = $240.

The Fund appealed this award to the Court of Appeals

(Thrush II).  The Fund took the position that "the amount of the average weekly wage [was] not determined by the unpublished opinion [in Thrush I]."  However, in an unpublished per curiam opinion, the Court of Appeals ruled that the Fund sought to raise in Thrush II "the precise issue that was previously determined [in Thrush I]" and, therefore, that the "law of the case" doctrine barred the court from reexamining the issue and "mandate[d] affirmance of [the Commission's award]."  Hence, the Court of Appeals did not reach the merits of the Fund's appeal.

As noted in the Court of Appeals' opinion in Thrush II, the "law of the case" doctrine provides as follows:

> Where there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. . . .  It differs from res judicata in that the conclusiveness of the first judgment is not dependent upon its finality.

American Filtrona Co. v. Hanford, 16 Va. App. 159, 164, 428 S.E.2d 511, 514 (1993) (quoting Steinman v. Clinchfield Coal Corp., 121 Va. 611, 620, 93 S.E. 684, 687 (1917)).

We must first determine whether the Court of Appeals' "law of the case" ruling is binding upon this Court and bars its consideration of the merits of the case.  If this question is answered in the affirmative, our inquiry is at an end.

On this question, Thrush's counsel stated in oral argument before this Court:

> The Court of Appeals correctly said that [the holding of Thrush I] is the law of this case.  There was no appeal taken by [the Fund] from the initial determination of the Court of Appeals of Virginia [in Thrush I], which essentially told them what the computation of the average weekly wage could have been,

and I think that would have been the appropriate time for [the Fund] to bring that argument before this Court. I think they are too late to try to bring it to you today.

We disagree with Thrush. The Fund was not bound to appeal from the Court of Appeals' decision in Thrush I. This is made clear by Code § 17-116.09, one of the Code sections enacted as part of the legislation creating the Court of Appeals. Code § 17-116.09 states as follows:

> A judgment, order, conviction, or decree of a circuit court or award of the Virginia Workers' Compensation Commission may be affirmed, or it may be reversed, modified, or set aside by the Court of Appeals for errors appearing in the record. If the decision of the Court of Appeals is to reverse and remand the case for a new trial, any party aggrieved by the granting of the new trial may accept the remand or proceed to petition for appeal in the Supreme Court pursuant to § 17-116.08.

While the Court of Appeals in Thrush I may have told the parties what the computation "could have been," the court did not modify the Commission's award as Code § 17-116.09 permits but reversed the award and remanded the case with directions for the Commission to make a new award. The Fund was entitled to accept the remand, rather than petition for an appeal to this Court, and to attempt on remand to persuade the Commission to make an award favorable to the Fund. As it happened on remand, the Commission made an award that was not favorable to the Fund. This prompted the Fund to appeal the award to the Court of Appeals in Thrush II and then to seek an appeal to this Court, a course of action which, in our opinion, is permissible under Code § 17-116.09.

To say, as Thrush would have us say, that the Court of Appeals' application of the "law of the case" doctrine is binding

at this stage of the appellate process would mean that, by accepting the remand, the Fund effectively waived its right to seek an ultimate appeal to this Court from an unfavorable decision following the remand. In our opinion, this is not the result the General Assembly intended by its enactment of Code § 17-116.09.

This brings us to the merits of the case. The Fund contends that the Commission erred in calculating the average weekly wage in this case "as if the worker was a full time, forty hour a week employee." On the other hand, Thrush contends that the Commission's "determination that [Brian's] average weekly wage was $240.00 is fully supported in both fact and law."

Thrush notes that the purpose "'for calculating the average weekly wage is to approximate the economic loss suffered by an employee or his beneficiaries.'" (quoting Bosworth v. 7-Up Dist. Co., 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987)). Thrush then says that, to achieve this purpose, the Workers' Compensation Act "gives the Commission considerable discretion in computing an employee's average weekly wage."

Thrush first points out that Code § 65.2-101(1)(a) defines "average weekly wage" as "[t]he earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, divided by fifty-two." Thrush tacitly concedes that this method of computing average weekly wage is inapplicable. Thrush emphasizes, however, that the section goes on to permit an alternative method by providing that if it is

impractical to compute the average weekly wage "as above defined" because of the shortness or the casual nature of the employment, "regard shall be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community."

However, Thrush submitted no evidence to the Commission concerning the earnings of a person engaged in similar employment. Indeed, the Court of Appeals stated in its Thrush I opinion that the record of the original Commission hearing was "silent with respect to wages of similarly situated employees during the fifty-two weeks prior to [Brian's] injury," and the record of the remand hearing is equally silent.

Thrush next points to Code § 65.2-101(1)(b) as providing alternative methodologies for computing average weekly wage. This section provides that "[w]hen for exceptional reasons the [formula prescribed by § 65.2-101(1)(a)] would be unfair either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury."

At one point on brief, Thrush indicates that the "other method" the Commission resorted to in computing Brian's average weekly wage was to take "the amount of wages he was being paid by Reichert per hour and projecting those wages over a forty-hour work week." However, Brian was employed by Reichert to work only one day, not a forty-hour week, so an essential component of the

Commission's projection breaks down upon analysis.

At another point on brief, Thrush indicates the Commission could have computed Brian's average weekly wage by combining the wage he was to earn as a painter for Reichert with the wage he earned from his previous work as a pipelayer. For example, responding to the Fund's argument that the long-standing "dissimilar employment rule" in workers' compensation law does not permit such combination when, as here, the previous work is dissimilar, Thrush states that "it is clear under any reasonable view of the plain language of [Code § 65.2-101(1)(b)] and the particular facts of this case that the Fund's assertion that dissimilar employment prevents extrapolation of a daily wage to a weekly wage is entirely erroneous."

Thrush's argument suggests that Code § 65.2-101(1)(b) has somehow discredited the dissimilar employment rule. We reject the suggestion; the rule is alive and well in workers' compensation law.

The rule finds its origin in the decision of the Industrial Commission (now the Workers' Compensation Commission) in <u>Thompson v. Herbert</u>, 4 O.I.C. 310 (1922). There, the Commission considered the same statutory language that is now contained in Code § 65.2-101(1)(b). The Commission held it was not permissible to combine wages earned in dissimilar employment because such action would contradict the definition now contained in Code § 65.2-101(1)(a) of "average weekly wage" as "the earnings of the injured employee <u>in the employment in which he was working at the time of the injury</u>." <u>Id.</u> at 316.

This Court considered the propriety of combining dissimilar employment in Graham v. Gloucester Furniture Corp., 169 Va. 505, 194 S.E. 814 (1938). There, the employee was injured while working in a part-time job. In order to obtain the maximum rate of workers' compensation, the employee sought to have his part-time wages combined with wages earned in his regular full-time employment. The Industrial Commission fixed compensation at the minimum rate. Although not mentioned in the opinion, what is now Code § 65.2-101(1)(b) was then part of the workers' compensation law. This Court affirmed because the evidence supported the Commission's finding that the employee's part-time work "was not the same character of work as that performed" in his full-time employment. Id. at 510, 194 S.E. at 816.

More recently, in Hudson v. Arthur Treachers, 2 Va. App. 323, 343 S.E.2d 97 (1986), involving the same factual pattern as Graham, the Court of Appeals focused directly upon Code § 65.2-101(1)(b) in considering the question whether its language permits "the combination of wages earned from concurrent dissimilar employment in determining the claimant's average weekly wage." Id. at 326, 343 S.E.2d at 99. The Court of Appeals answered the question in the negative, observing that because the Commission has consistently applied the dissimilar employment rule for many years, it must be presumed "that the legislature was aware of, and is in agreement with, this practice." Id. The Court of Appeals also made an observation, with which we concur, that this Court's holding in Graham "represents an acknowledgement and approval of the Commission's practice of

denying the combination of wages earned in dissimilar employment for purposes of determining a claimant's pre-injury average weekly wage."  Id. at 327, 343 S.E.2d. at 99.

Hence, although the Workers' Compensation Act provides several permissible methods of computing the average weekly wage, none supports the average weekly wage determination made by the Commission in this case.  This leaves for consideration only the $42 Brian was to be paid for his one day of work for Reichert as a basis for computing the compensation payable to Thrush.

Accordingly, we will reverse the judgment appealed from and remand the case to the Court of Appeals with directions to remand the matter to the Commission.  The remand to the Commission shall direct that it fix the amount of compensation payable to Thrush based upon the actual weekly wage of $42 and consistent with the views expressed in this opinion.

Reversed and remanded.