PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Russell and Lacy, S.JJ.

ALISSA M. THORPE, BENEFICIARY OF
MATTHEW ALSON THORPE (DECEASED)[1]

OPINION BY
v.  Record No. 110349        SENIOR JUSTICE CHARLES S. RUSSELL
May 4, 2012
TED BOWLING CONSTRUCTION, ET AL.


FROM THE COURT OF APPEALS OF VIRGINIA

This is an appeal from an award of worker's compensation benefits.  It presents a question concerning the statutory rules governing the determination of an employee's "average weekly wage."

Facts and Proceedings

The essential facts are undisputed.  In 2006, Matthew Alson Thorpe was the owner of a self-storage facility and operated a side business called "Alson's Ornamental Iron" that installed residential porch railings.  Eric McMahon worked for Alson's Ornamental Iron.

---

[1] Alyssa Thorpe did not file her claim with the Workers' Compensation Commission as personal representative of the deceased Matthew Alson Thorpe.  Rather, the parties entered into a stipulation that she was his wholly dependent wife at the time of his injury and was therefore a statutory beneficiary pursuant to Code §§ 65.2-515(A)(1) and 65.2-512(A)(1).  The Commission originally styled the case: "Matthew Alson Thorpe (Deceased) - Employee, Alissa M. Thorpe, Claimant."  Later, the caption was changed to its present form.

In May 2006, John Clary, one of Thorpe's storage customers, offered to employ Thorpe and McMahon to complete the metal roof and siding of an industrial building he was constructing for Ted Bowling Construction. Clary offered Thorpe and McMahon $5000 to complete the job. Clary wanted the job completed "as soon as possible." He expected them to complete it in one week, but made it clear that he would pay $5000 only when the job was completed, no matter how long it took. Clary memorialized his offer by writing "5000" with soapstone on the top of a shop table in the office in which the employment was being discussed. Because the iron railing business was "slow" at the time, Thorpe and McMahon agreed to do the work, even though they had never previously done work of that kind. They agreed to divide the $5000 payment equally between themselves.

Clary provided tools and materials and gave the men some instruction and supervision. On May 26, 2006, their fourth day of work, while installing metal sheets on the roof of the building, Thorpe fell through a skylight to his death. His widow, Alissa M. Thorpe (the claimant), filed with the Workers' Compensation Commission of Virginia (the Commission) a claim for worker's compensation benefits.

A deputy commissioner heard the evidence in February 2009. Clary had "disappeared" and, because of Thorpe's death, the only witness to the terms and conditions of the employment, as well

2

as the facts of the fatal accident, was McMahon.[2]  Thorpe and McMahon had never before engaged in the kind of work they were doing for Clary.  Neither party adduced any evidence of the prevailing wage paid at that time and in that area for similar work.  Thus, the only evidence presented to the deputy commissioner concerning Thorpe's wages for work in the relevant trade was McMahon's testimony as to their single transaction with Clary, described above.

After the hearing, the deputy commissioner, in a letter to counsel, wrote:

> I confess that though I have scoured the record to access all the information available to make a proper determination of the average weekly wage of Mr. Thorpe, pursuant to § 65.2-101, the evidence is limited.  For that reason, I invite your input as to whether there needs to be a reconvening of the hearing for that limited issue, or, if both parties are in agreement that no further evidence should come into the record, for your position statements on the determination of the average weekly wage.

Counsel responded by a letter stating that they agreed that no further evidence was necessary and that they would state their positions in writing.

---

[2] Clary did business as "JMC Welding."  The Commission determined that he was Thorpe's employer at the time of the accident.  Ted Bowling Construction, for whom Clary was constructing the building, was determined to be the statutory employer and Virginia Surety Company defended the claim as its compensation carrier.

3

After receiving counsels' written arguments, the deputy commissioner found that Thorpe was Clary's employee at the time of the accident and that Ted Bowling Construction was his statutory employer. The deputy commissioner found that Alissa Thorpe was Thorpe's sole beneficiary and was entitled to benefits under the Workers' Compensation Act (the Act).

Turning to the issue of Thorpe's average weekly wage at the time of the accident, the deputy commissioner held that the only evidence in the record was that Thorpe was employed to perform a specific job for a total compensation of $5000 (to be divided with McMahon) and was not employed for a specific period of time. He was not an independent contractor because Clary had the power to control and supervise his work. Neither was he a casual employee. Because there was no evidence in the record of any other wages Thorpe, or any other person, had been paid for similar work, the deputy commissioner was left with no alternative but to compute Thorpe's average weekly wage on the basis of the single payment of $5000, from which Thorpe would be paid $2500, pursuant to his contract of employment with Clary.[3] The deputy commissioner determined that Thorpe would have

[3] The evidence showed that Clary never paid anything to McMahon or to anyone on Thorpe's behalf. The deputy commissioner ruled that to be immaterial because of Clary's promise of payment.

4

received from Clary $2500 during the entire calendar year 2006. Divided by 52 weeks, that resulted in an average weekly wage from Clary of $48.08. In the absence of any other evidence, the deputy commissioner adopted that figure as the average weekly wage applicable to the claim. That finding resulted in an award of $48.08 payable weekly for 500 weeks, plus burial, medical and transportation costs, and attorney's fees.

The claimant appealed to the full Commission. By a divided vote, the Commission agreed with the deputy commissioner, holding:

> There was no evidence within the record that the decedent had anticipated any further jobs from the employer. The decedent had never worked for the employer and had never attempted this particular type of work prior to beginning this job. The claimant may have had other employment; however, the record shows that this employment was dissimilar to the employment in which he was working at the time of his death and, thus, any earnings from that employment could not be used to calculate the average weekly wage.

The claimant appealed to the Court of Appeals. A unanimous three-judge panel affirmed the decision of the Commission by a published opinion, Thorpe v. Clary, 57 Va. App. 617, 629, 704 S.E.2d 611, 616 (2011). We awarded the claimant an appeal. The claimant's sole assignment of error is to the Court of Appeals' ruling affirming the Commission's holding that $48.08 was Thorpe's average weekly wage applicable to the claim.

Analysis

Awards of workers' compensation benefits under the Act are based upon the employee's average weekly wage. Dinwiddie Cnty. Sch. Bd. v. Cole, 258 Va. 430, 432, 520 S.E.2d 650, 652 (1999). Code § 65.2-101(1) defines the term "[a]verage weekly wage" within the meaning of the Act and governs its application. That section provides for a four-step analysis. First, if the employee has been working "in the employment in which he was working at the time of the injury" for 52 weeks or more, then his average weekly wage is computed by dividing his earnings in that employment, during the 52 weeks immediately preceding his injury, by 52. Second, the statute provides that if the employment was less than 52 weeks in duration prior to the injury, the employee's earnings during the time of his employment shall be divided by the number of weeks he earned wages, "provided that results fair and just to both parties will be thereby obtained." Third, the statute provides:

> When, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

Code § 65.2-101(1)(a). Fourth, the statute provides:

> When for exceptional reasons the foregoing would be unfair either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

Code § 65.2-101(b).

The claimant argues on appeal that this case is governed by our decision in Uninsured Employer's Fund v. Thrush, 255 Va. 14, 17, 496 S.E.2d 57, 58 (1998). There, Thrush was hired for one day of work, painting power poles in a parking lot. He was to work for seven hours at an agreed wage of $6 per hour. While performing the work, Thrush fell from a scaffolding, came into contact with electric power lines, and died as a result of electrocution. Although Thrush's usual occupation was as a pipe-layer, we agreed with the Commission's holding that his earnings from that employment could not be considered in computing his average weekly wage, observing that the "dissimilar employment rule" is "alive and well in workers' compensation law." Id. at 21, 496 S.E.2d at 10. We did, however, as the claimant points out, determine that Thrush had the expectancy of a payment of $42 for the seven hour day for which he was employed. That figure, we held, was the only basis provided by the evidence for computing his average weekly wage, resulting in an award of $42 per week. Id. at 22, 496 S.E.2d at 61.

The present case differs from Thrush in a fundamental respect. Thrush was employed for a fixed period of time, one day. This meant that the wage he was to earn that one day represented the total amount he was to earn from that employment for the week he was employed. No such time-based conclusion is possible in the present case. Thorpe was not employed for any period of time. Rather, he was hired to perform a job for a fixed price. His compensation would have been the same whether he completed it in four days or 52 weeks. Thus, our holding in Thrush is inapplicable here.

The parties were offered an unusual opportunity to reopen the case before the deputy commissioner to supplement the very limited evidence in the record concerning the applicable average weekly wage. Under the third step of the statutory analysis, evidence of the wages earned by similarly-situated workers would have been admissible to supplement this very sparse record, but neither party chose to offer such evidence. As the Court of Appeals correctly held, the burden of proof is upon the claimant at every step of the decision-making process. Thorpe, 57 Va. App. at 626, 704 S.E.2d at 15 (citing Thrush, 255 Va. at 20, 496 S.E.2d at 60). The claimant failed to carry the burden of proving that any basis existed for computing Thorpe's average weekly wage beyond the fact of his single transaction with Clary.

8

The claimant relies on the language of the statute in its specification of the second step in the analysis, providing that where the employment has lasted less than 52 weeks, his earnings during the time he was employed "shall" be divided by the number of weeks he earned wages.  Code § 65.2-101(1)(a).  This, the claimant contends, makes the second-step analysis mandatory, requiring the Commission to divide $2500 by one, resulting in an average weekly wage of $2500.  The claimant overlooks the qualifying proviso that completes the second-step analysis: "provided that results fair and just to both parties will be thereby obtained."  Id.

Thorpe had never worked in the metal roofing and siding occupation before, and there was no evidence that he would ever do so in the future.  He had never worked for Clary before and there was no evidence that any future employment was contemplated by either of them.  Their engagement was for a single project.  Under those circumstances, it would manifestly not be "fair and just to both parties" to impose on the employer an award based on the assumption that the employee was hired for a continuing wage of $2500 per week.

## Conclusion

For the reasons stated, we will affirm the judgment of the Court of Appeals.

Affirmed.

9