COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Kelsey and Petty
Argued at Richmond, Virginia

THOMAS ERVIN BARRETT, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 1945-13-2          JUDGE D. ARTHUR KELSEY
                                      JUNE 3, 2014

DOMINION RESOURCES SERVICES AND
  VIRGINIA ELECTRIC AND POWER COMPANY

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Geoffrey R. McDonald (Seth R. Carroll; Geoffrey R.
McDonald & Associates, P.C., on brief), for appellant.

Emily O. Sealy (Arthur T. Aylward; Midkiff, Muncie &
Ross, P.C., on brief), for appellees.

Thomas Ervin Barrett, Jr. appeals a decision of the Virginia Workers' Compensation

Commission denying his claim for benefits. He contends the commission erroneously concluded

that the facts did not show a causal connection between any condition of the workplace and his

injury. Finding no such error, we affirm.

I.

We view the evidence on appeal in the light most favorable to Barrett's employer, "the

prevailing party before the commission." Bernard v. Carlson Cos.-TGIF, 60 Va. App. 400, 403,

728 S.E.2d 508, 509 (2012) (quoting Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656

S.E.2d 431, 433 (2008)).

Barrett claimed he sustained an injury to his right leg on August 30, 2011. On that date,

he was fixing a leaky pump seal, a project that took two shifts to complete and required

approximately six hours of kneeling and squatting on a concrete floor. The floor was not wet at

the time Barrett repaired the pump seal, but the leak had left a film of dirt from muddy water

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

drying on the floor. Barrett experienced some discomfort working on his knees, but it was not until after the second day of working on the pump that he felt "general pain" in his right knee. App. at 84. He considered it ordinary joint pain from the exertion of kneeling. His denim pant legs had not torn, and he did not notice any scratches or broken skin on either knee.

Barrett later discovered that his right knee was swollen and that there was "one small little dot" at the center of the swelling. Id. at 86. A few days later, on September 2, 2011, Barrett sought medical attention and learned that his right knee had developed cellulitis, an infection caused by bacteria. His treating physicians never determined the exact causation of the cellulitus. After medical treatment and recovery time, Barrett returned to work on October 3, 2011, and his pain completely subsided after about three months.

A medical expert, Dr. Robert Smith, reviewed the treating physicians' records and offered an opinion on causation. Dr. Smith never spoke with Barrett or provided any medical treatment to him, but nonetheless concluded Barrett's cellulitis could have been caused by working on his knees. The exertion, the expert surmised, likely led to "a hematogenously seeded infection" rather than through a "break in the skin." Id. at 177. In other words, bacteria, which may be "normally harmless . . . in the body," multiplied in the swollen knee and produced an abscess. Id. at 177-78.

The full commission reviewed this evidence and unanimously concluded that Barrett did not prove his case by a preponderance of the evidence. None of the treating physicians concluded that the cellulitis was caused by Barrett's work conditions. The commission found that the retained expert proved only a theory of "general causation" lacking any persuasive evidentiary support. Barrett v. Dominion Res. Servs., 2013 Va. Wrk. Comp. LEXIS 842 (Sept. 12, 2013). The commissioners explained their reasoning this way:

> We are not persuaded the claimant proved a sufficient causal
> relationship between the illness and the work place exposure, as no

> specific pathogen was identified. Though the claimant produced some evidence there was residue in the worksite which could have contained the offending bacteria, Dr. Smith noted that in hematogenously seeded infection such as that suffered by the claimant, the bacteria need not even be harmful and could be a "normally harmless bacteria harbored in the body". (Cl.'s Ex. 1). Thus, the bacteria causing the infection in this case could have emanated from a limitless variety of sources. . . . [Thus] we cannot conclude based on the evidence presented that he proved an identifiable incident causing his injury.

Id.

II.

On appeal, Barrett asks us to reverse the commission's decision on several grounds — all of which, it appears to us, merely involve slightly rephrased challenges to the commission's factfinding, and none of which, in our opinion, justify the relief Barrett seeks.

Absent a legal presumption, a claimant can recover benefits only if he proves "by a preponderance" of the evidence that the cause of his injury arose out of a condition of his employment. Lysable Transp., Inc. v. Patton, 57 Va. App. 408, 419, 702 S.E.2d 596, 601 (2010). Barrett thus had the burden of proving by a preponderance of the evidence that his working conditions caused his cellulitis and that it would not have occurred otherwise. Barrett argues on appeal that he did just that: A medical expert, Dr. Smith, provided a medical opinion linking the cellulitis to bacteria already in Barrett's body that congregated in his swollen knee, which, in turn, was caused by his kneeling and squatting at work. Under Barrett's view, he made out a *prima facie* case of causation, and the commission had no choice but to accept it.

We accept Barrett's initial premise, but not his conclusion. A *prima facie* case is the threshold level of evidentiary proof that is sufficient to permit a factfinder, if he is so persuaded, to grant the relief requested. Nothing in the concept of a *prima facie* case, however, requires that the factfinder actually be persuaded. In logical as well as legal terms, a *prima facie* case sets out a sufficient premise, but not a necessary one — that is, a plausible understanding of the evidence

that the factfinder can accept, but not one that he must accept.  See generally Cent. Va. Obstetrics & Gynecology Assocs. v. Whitfield, 42 Va. App. 264, 274-75, 590 S.E.2d 631, 637 (2004) (observing that the general use of the term "does not connote anything more than a mere evidentiary sufficiency"); Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 4-4, at 218 (7th ed. 2012) (noting that a *prima facie* case "merely raises a permissible inference" which the factfinder may "accept or reject"); 9 John H. Wigmore, Evidence § 2494, at 378-80 (Chadbourne rev. 1981) (footnotes omitted) (explaining that the "sufficiency of the evidence . . . is also often referred to as a prima facie case" (emphasis omitted)); see also Virginia v. Black, 538 U.S. 343, 369 (2003) (Scalia, J., concurring in part) (describing this "established meaning in Virginia" as "perfectly orthodox").

The cases cited by Barrett demonstrate how this principle works.  Not one of them involves an appellate *reversal* of the commission's denial of benefits coupled with an order directing the commission to grant benefits — which could occur only in situations in which the evidence was so irrefutable that no rational factfinder could deny benefits.  Barrett instead relies only on cases in which the commission had granted benefits, and we or the Virginia Supreme Court rejected the employer's argument on appeal that the evidence failed to make a *prima facie* showing sufficient to support the award.  See, e.g., S. Express v. Green, 257 Va. 181, 509 S.E.2d 836 (1999), aff'g 26 Va. App. 439, 495 S.E.2d 500 (1998) (upholding the commission's grant of benefits to a claimant).

The issue before us, however, is different.  We need not decide whether a rational factfinder could have found Barrett's causation evidence persuasive (thus supporting an award of benefits), but rather whether the same evidence could be rejected as unpersuasive (thus supporting a denial of benefits).  In most cases, as in this one, the answer to that question is dictated by the governing standard of appellate review.

While we review "pure questions of law" *de novo*, Spicer v. Va. Birth-Related Neurological Injury Comp. Program, 48 Va. App. 613, 618, 633 S.E.2 732, 734 (2006), "we review questions of fact under the highest level of appellate deference," Thorpe v. Clary, 57 Va. App. 617, 623, 704 S.E.2d 611, 614 (2011), aff'd sub nom. Thorpe v. Ted Bowling Constr., 283 Va. 808, 724 S.E.2d 728 (2012). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command that binds us so long as a rational mind upon consideration of all the circumstances could come to the conclusion the commission adopted." Id. (citation and internal quotation marks omitted).

Consequently, "[b]ecause we do not judge the credibility of witnesses or weigh the evidence on appeal, our personal view of the underlying factual debate plays no role in the task of appellate review." Id. (internal quotation marks omitted). "It thus makes no difference that we would have decided the facts differently, because the statute authorizes the commission to adopt whatever view of the evidence it considers most consistent with reason and justice." Id. at 623-24, 704 S.E.2d at 614 (citations, brackets, and internal quotation marks omitted). This standard of review is "one that we scrupulously obey both in principle and in practice when reviewing questions of causation," Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 750, 601 S.E.2d 693, 697 (2004), because the "commission's determination regarding causation is a finding of fact," Steadman v. Liberty Fabrics, Inc., 41 Va. App. 796, 803, 589 S.E.2d 465, 469 (2003).

The facts of Barrett's case did not persuade the commission by a preponderance of the evidence that any condition of the workplace caused his cellulitis. We find nothing irrational about this conclusion. No treating physician linked Barrett's cellulitis to his work conditions. The only physician who attempted to make this connection had never examined Barrett, never spoke with him, and never identified any specific pathogen. Barrett did not call this physician as

a witness, and thus, the witness's expert opinion was never tested by the crucible of cross-examination.  Instead, he relied solely on the physician's written report, which, the commission found, addressed causation in overly general terms.

In sum, the commission acted within its factfinding discretion when it found Barrett's medical evidence of causation to be unpersuasive.  Because Barrett had the burden of proof on this issue, we affirm the commission's denial of benefits.

<u>Affirmed.</u>