PRESENT: Lemons, C.J., Goodwyn, Mims, Powell, Kelsey, McCullough JJ., and Millette, S.J.

CITY OF CHARLOTTESVILLE, ET AL.

v.  Record No. 200791

WILLIAM SCLAFANI

OPINION BY
JUSTICE CLEO E. POWELL
AUGUST 26, 2021

FROM THE COURT OF APPEALS OF VIRGINIA

The City of Charlottesville (the "City") appeals the decision of the Court of Appeals affirming an award of workers' compensation benefits.

## I.  BACKGROUND

In May 2017, William Sclafani ("Sclafani"), a Charlottesville police officer, took part in a SWAT team training activity.  Sclafani played the role of the suspect in various scenarios from 8:00 a.m. until approximately 5:00 p.m.  In this capacity, Sclafani was repeatedly put on the ground, handcuffed with his hands behind his back and then picked up while still in handcuffs.  During the training, Sclafani experienced some discomfort but there was never any significant pain.  However, at the end of the day he discovered that he could not straighten his left arm to reach the steering wheel of his car and go home.  As the evening progressed, Sclafani found that he could no longer move his arm up or down.  According to Sclafani, he did not feel any pain until the next morning.

Sclafani reported his injury to his supervisor but did not seek medical treatment for several days.  After seeing a nurse practitioner, he was advised to see a specialist if his arm did not improve in three weeks.  Sclafani subsequently sought treatment with an orthopedist who gave him a steroid injection and sent him to physical therapy.  Sclafani's shoulder eventually

required surgery for rotator cuff tears and traumatic impingement syndrome.[1]  After his surgery, Sclafani transitioned back to light-duty and then full-duty work.

Sclafani filed a workers' compensation claim seeking an award of medical benefits and temporary total disability benefits for the period beginning five days before his surgery and lasting until his release to light-duty work.  The City denied that Sclafani had suffered a compensable injury by accident.  During a deposition, Sclafani testified that he was never roughly handled during the training nor did he ever experience any sudden pain or feel a pop or crack.  However, he recalled that, during the last scenario, he "was picked up a little weird" and "felt some discomfort."  When he was subsequently asked if that was the incident that he believed resulted in his injury, Sclafani responded, "Oh, yeah.  There's no doubt."

After a hearing before a Deputy Commissioner, Sclafani's claim was initially denied on the basis that, although Sclafani had clearly suffered an injury, he failed to establish an identifiable incident or sudden precipitating event that caused the injury.  Sclafani requested a review by the full Commission.  The Commission reversed the Deputy Commissioner's ruling and entered an award of benefits.  According to the Commission, "the training session provided

---

[1] Shoulder impingement syndrome is defined as

> a disorder that results from repeated "microtrauma" to the various structures that border the subacromial space, primarily the supraspinatus tendon, the long head of the biceps (especially at the "bicipital groove" where the muscle traverses the upper end of the humerus), and the subacromial bursa. Without intervention, the condition naturally progresses, as the impingement of the tendon/bursa, done on a fairly frequent basis, causes inflammation, which reduces the already small space, increasing the frequency and severity of impingement which, over time, can lead to complete tears of the rotator cuff.

Christine Stewart & Betty Brutman, *Shoulder impingement syndrome – Overview*, Attorneys Medical Advisor § 72:14 (April 2021 update).

the necessary rigidity of temporal precision to constitute one event" and, therefore, Sclafani had sufficiently established the identifiable incident that had caused the injury.

The City appealed the Commission's decision to the Court of Appeals. In a published opinion, the Court of Appeals reversed the Commission's ruling on the basis that "the Commission assumed but failed to find that Sclafani's testimony established an identifiable incident with sufficient temporal precision." *City of Charlottesville v. Sclafani*, 70 Va. App. 613, 623 (2019) (hereafter, "*Sclafani I*"). The Court of Appeals acknowledged that "[t]he assumption that Sclafani sustained a non-cumulative injury during the last four hours of training was justified based on Sclafani's own testimony," but noted that the Commission had based its decision on a finding that the injury had occurred during the entire eight-hour training session rather than just the last four hours. *Id.* It remanded the case to the Commission to make a factual finding regarding "whether Sclafani's injury occurred during the four post-lunch hours of the training." *Id.*

On remand, the Commission noted that Sclafani did not notice any problems with his shoulder prior to lunch, whereas after lunch, he noted some discomfort. As such, the Commission found that Sclafani "sustained a non-cumulative injury during the last four hours of training." The City again appealed to the Court of Appeals.

On appeal, the Court of Appeals ruled that it would not consider whether Sclafani had "suffered a compensable, discrete injury by accident arising out of employment" or "met his burden to show an identifiable incident" on the basis that those issues had previously been raised and adversely decided in *Sclafani I* and the City never appealed those rulings to this Court. The Court of Appeals further affirmed the Commission's determination that Sclafani had satisfied his burden to prove that he had incurred his injury at a reasonably identifiable time, and ruled that

3

this conclusion was mutually exclusive with the city's assertion that the injury was cumulative in nature.

The City appeals.

## II. ANALYSIS

On appeal, the City initially asserts that the Court of Appeals erred in its application of the law of the case doctrine. It next contends that the Court of Appeals and the Commission erred in finding that Sclafani suffered a compensable, discrete injury arising out of employment during the training session. Specifically, the City claims that Sclafani failed to meet his burden of demonstrating that an identifiable accident caused his injury as opposed to repetitive trauma.

## A. LAW OF THE CASE

The City first argues that the Court of Appeals erred in holding that the law of the case doctrine precluded its review of whether a compensable injury arising out of Sclafani's employment occurred and whether he met his burden to show an identifiable accident was the cause of that injury. The City insists that the present case is analogous to *Uninsured Employer's Fund v. Thrush*, 255 Va. 14, 19 (1998), where we held that a matter previously raised on appeal to the Court of Appeals and remanded to the lower tribunal is not subject to the law of the case doctrine on a subsequent appeal. We agree.

This Court has explained the law of the case doctrine as follows:

> Where there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on the first appeal is the law.

*Steinman v. Clinchfield Coal Corp.*, 121 Va. 611, 620 (1917).

The Court has further recognized that "when a party fails to challenge a decision rendered by a court at one stage of litigation, that party is deemed to have waived [its] right to challenge that decision during later stages of the 'same litigation.'" *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008). Thus, "[t]he 'law of the case' doctrine applies both to issues that were actually decided by the court, and also to issues 'necessarily involved in the first appeal, whether actually adjudicated or not.'" *Id.* (quoting *Kemp v. Miller*, 160 Va. 280, 285 (1933)).

We have, however, recognized an exception to the law of the case doctrine. In *Thrush*, the employer appealed the Commission's decision regarding the amount of benefits to award. 255 Va. at 17. The Court of Appeals reversed the award with directions that the Commission make a new award. *Id.* The Court of Appeals did not modify the award, but it clearly indicated the manner in which it should be modified. *Id.* On remand, the Commission followed the Court of Appeals' guidance and entered a new award. *Id.* The employer again appealed the amount of benefits awarded. *Id.* The Court of Appeals, noting that the issue was the same issue that had been previously raised, ruled that the law of the case doctrine barred its further consideration of the matter. *Id.* at 18. On appeal to this Court, we held that, under these circumstances, where the Court of Appeals could have modified the ruling of the Commission, but chose instead to remand the matter, the law of the case doctrine had no application. *Id.* at 19. We explained that, in enacting Code § 17–116.09,[2] the General Assembly clearly intended to allow a party to choose between appealing the Court of Appeals' decision to this Court or accepting the remand without "waiv[ing] its right to seek an ultimate appeal to this Court from an unfavorable decision following the remand." *Id.*

---

[2] Code § 17–116.09 was subsequently recodified as Code § 17.1-412. 1998 Acts ch. 872.

5

The posture of the present case is virtually identical to that of *Thrush*. In *Sclafani I*, the Court of Appeals explicitly acknowledged that whether the Commission properly determined that Sclafani had suffered a discrete, compensable injury arising out of his employment and whether Sclafani met his burden to show such an injury were the issues before it. 70 Va. App. at 618. The Court of Appeals noted that both of these issues turned on whether Sclafani's evidence provided sufficient temporal proof as to when the injury occurred. *Id.* at 620. However, rather than address the sufficiency of Sclafani's evidence, the Court of Appeals ruled that the Commission's finding lacked "sufficient temporal precision" due to the Commission's reliance on the entire eight-hour training session. *Id.* at 623. Specifically, the Court of Appeals stated that "[i]t appears . . . that the Commission assumed but failed to find that Sclafani's testimony established an identifiable incident with sufficient temporal precision." *Id.* The Court of Appeals did not modify the Commission's finding; instead, it remanded the matter, while strongly indicating that a finding that the shoulder injury occurred during the four-hour post-lunch period was supported by the record and would be sufficiently temporally precise. *Id.* On remand, the Commission followed the Court of Appeals' guidance regarding when the shoulder injury occurred, which was again appealed by the City.

Under the precedent established in *Thrush*, the City's acceptance of the Court of Appeals' decision to remand the matter did not bar it from subsequently appealing an unfavorable ruling by the Commission. Thus, the Court of Appeals erred in its application of the law of the case doctrine. Accordingly, we will reverse the decision of the Court of Appeals and consider the arguments raised by the City regarding whether a compensable injury arising out of Sclafani's employment occurred and whether Sclafani met his burden to show an identifiable accident was the cause of that injury.

6

B.  INJURY BY ACCIDENT

Having determined that the law of case doctrine does not bar consideration of whether a compensable injury arising out of Sclafani's employment occurred or whether he met his burden to show an identifiable accident was the cause of that injury, we will address those issues here. The City argues that, because Sclafani cannot identify the specific incident that led to his injury, he failed to meet his burden and, therefore, the Court of Appeals and the Commission erred in finding that he suffered a compensable, discrete injury by accident arising out of his employment.  According to the City, Sclafani's evidence only established that his injury occurred at some point during the four-hour period after lunch.  The City insists that such evidence is not sufficiently bound to the rigid temporal precision required under the Virginia Workers' Compensation Act (the "Act").  To the extent that the Court of Appeals appears to have established a bright-line rule that a four-hour time period is sufficiently temporally precise to establish a compensable injury under the Act, we agree with the City.

This Court has long recognized that the Act requires a claimant to prove, by a preponderance of the evidence, (1) an "'injury by accident' or occupational disease, (2) arising out of, and (3) in the course of, the employment." *Morris v. Morris*, 238 Va. 578, 584 (1989) (internal citation omitted).  Here, whether Sclafani's injury arose out of and occurred in the course of his employment is not at issue; the sole issue before the Court is whether there was sufficient evidence to prove that he suffered an "injury by accident" within the meaning of the Act.

To demonstrate an injury by accident "a claimant must prove that the *cause* of his injury was an *identifiable incident or sudden precipitating event* and that it resulted in an *obvious sudden mechanical or structural change in the body*."  *Morris*, 238 Va. at 589 (emphases in

7

original).  Our jurisprudence establishes that the requisite causative event must be more than a simple reference to a "work activity;" it must be a specific occurrence that can be temporally fixed with reasonable accuracy.  *Id.*  Merely establishing that a claimant was engaged in work activity during the discrete time period in which the injury occurred is insufficient.  *Id.* at 588.

In *Morris*, the Court specifically discussed the Court of Appeals' adoption of the "three hour test," which is somewhat similar to the approach it took in this case.  Under the three hour test, "any work-related injury resulting from stress which lasts three hours or less is deemed an 'injury by accident'; injuries resulting from stress extending over a longer period fail to meet the test."  *Id.*  In rejecting this test, the Court noted that it did not require the claimant to identify the specific causative event that resulted in the injury.  Rather, the three hour test only required that a claimant establish they were engaged in "'work activity' within a 'reasonably discrete time frame.'"  *Id.*  The Court's explicit rejection of this test made it clear the proper focus was not on the specific time frame in which the accident occurred, but on the specific causative event that precipitated the accident because "[s]uch events are inevitably 'bounded with rigid temporal precision.'"  *Id.* at 588-89.[3]

The present case exemplifies the reason we rejected the three hour test in *Morris*.  Here, the evidence establishes that the afternoon training involved multiple different scenarios where Sclafani "would be put on the ground and cuffed" or he would "just get on the ground and be cuffed and be picked up and moved away."  In other words, the afternoon training session involved multiple potential causative events occurring throughout the four-hour post-lunch

---

[3] That is not to say, however, that a single causative event cannot occur over an extended period of time.  *See, e.g.*, *Van Buren v. Augusta County*, 66 Va. App. 441, 455 (2016) (recognizing that a rescue occurring over a forty-five-minute period was "one event, not numerous discrete events" for the purpose of determining whether the claimant's injury occurred during an identifiable event).

period. Clearly, a claim asserting that an injury occurred during a time period where multiple potential causative events occur is not sufficiently temporally precise to establish a compensable injury. Accordingly, the Court of Appeals' decision affirming the Commission's finding on this basis was erroneous.

Although we have determined that the Court of Appeals' basis for affirming the Commission was erroneous, we find that the record ultimately supports its decision and, therefore, we will uphold its judgment through the application of the right result for the wrong reason doctrine. *See Haynes v. Haggerty*, 291 Va. 301, 305 (2016) ("In instances where a [lower] court's decision is correct, but its reasoning is incorrect, and the record supports the correct reason, we uphold the judgment pursuant to the right result for the wrong reason doctrine.").[4] As previously noted, our jurisprudence requires a claimant to fix the time of the specific incident that caused the injury with reasonable accuracy. *Morris*, 238 Va. at 589. Here, there is credible evidence which supports Sclafani's assertion that his injury occurred as a result of a specific incident during the final scenario.

The Commission's findings of fact "are conclusive and binding on appeal," *Carrington v. Aquatic Co.*, 297 Va. 520, 522 (2019); *see also* Code § 65.2-706 (stating that the Commission's award "shall be conclusive and binding as to all questions of fact"), provided that there is credible evidence to support those findings, *Virginia Elec. & Power Co. v. Kremposky*, 227 Va. 265, 269 (1984). Further, we "construe the evidence in the light most favorable to the prevailing

---

[4] Our use of the right result for the wrong reason doctrine in the present case, as opposed to the right result for a different reason doctrine, is due to the subtle distinction between the two doctrines. Notably, the right result for a different reason doctrine applies "in cases . . . in which we express *no view on the correctness of the lower court's rationale*." *Rickman v. Commonwealth*, 294 Va. 531, 542 (2017) (emphasis added). Thus, that doctrine is inapplicable here.

part[y] before the Commission." *Jeffreys v. Uninsured Emp'r's Fund*, 297 Va. 82, 87 (2019). So viewed, we note that Sclafani testified that, during the last scenario of the day, he was "picked up a little weird" and he "felt some discomfort." When he was subsequently asked if that was the incident that caused his injury, Sclafani unequivocally answered: "Oh, yeah. There's no doubt." Similarly, in a recorded statement with the City's insurance provider, Sclafani stated that, in "one of the scenarios at the end," his shoulder "got tweak[ed] a little." This evidence was uncontradicted and we cannot say that it was inherently incredible or inconsistent with the other facts in the record. *See generally Breckenridge v. Marval Poultry Co.*, 228 Va. 191, 195 (1984) (recognizing that uncontradicted evidence of an unimpeached witness may not be arbitrarily disregarded).

In contrast, the City offered no evidence to refute Sclafani's claim that this specific incident caused his injury. The City instead focused on the fact that Sclafani admitted that he did not immediately feel a pop or crack or any intense pain at the time the injury occurred. At the same time, however, the City offered no evidence to establish that such symptoms would have suddenly manifested as a result of the injury suffered by Sclafani. Moreover, evidence of the sudden onset of symptoms of an injury, or the lack thereof, is not entirely dispositive of whether an injury by accident occurred. Admittedly, such evidence may be useful in identifying the specific incident that caused the injury, but nothing in our jurisprudence indicates that such evidence is required. Thus, the City's evidence is insufficient to rebut Sclafani's testimony regarding when the injury occurred.

### C. CUMULATIVE INJURY

Finally, the City argues that the Court of Appeals and the Commission erred in failing to find that the Sclafani's injury was a cumulative injury that resulted from repetitive trauma. The

10

City points out that Sclafani acknowledged that his participation in the training required him to engage in the same three movements which eventually led to his injury. We note, however, that the City's argument on this issue relies heavily on its earlier argument that there was no identifiable incident sufficient to establish an injury by accident under the Act.

We have recognized that a cumulative injury is an injury that is

> "not the result of some particular piece of work done or condition encountered on a definite occasion, but caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm, is definitely excluded from compensation."

*Aistrop v. Blue Diamond Coal Co.*, 181 Va. 287, 293 (1943) (quoting Francis H. Bohlen, *A Problem in the Drafting of Workmen's Compensation Acts*, 25 Harv.L.Rev. 328, 343 (1912)).

One of the reasons we have required claimants to identify the specific incident that caused their injury is because "allowing compensation for injuries gradually received would impose upon the last employer the burden of pensioning every workman worn out or invalided by unhealthful exposure on the part of former employers." *Id.* When the definition of cumulative injury is considered in conjunction with the reasoning for requiring the identification of the specific incident, it is clear that an injury caused by an identifiable incident is mutually exclusive of an injury caused by repetitive trauma.[5] Thus, our determination that Sclafani sufficiently identified the specific incident that caused his injury essentially renders the City's

---

[5] We recognize that the Court has previously indicated that injuries similar to those suffered by Sclafani are not compensable under the Act. *See Merillat Indus., Inc. v. Parks*, 246 Va. 429, 433 (1993). The facts of the present case, however, differ significantly from *Merillat Industries*. Notably, the claimant in *Merillat Industries* asserted that his injuries were caused by an occupational disease, not an injury by accident. *Id.* at 430. Furthermore, unlike the present case, the claimant made no attempt to identify any specific incident that caused his injury; rather, it was "uncontradicted that the injury was caused by repetitive trauma." *Id.* at 433. Accordingly, *Merillat Industries* is inapposite to the present case.

argument on this issue moot.[6]  Accordingly, we will affirm the Court of Appeals' decision on this issue.

III.  CONCLUSION

For the foregoing reasons, we reverse that portion of the judgment of the Court of Appeals applying the law of the case doctrine; however, upon review of the parties' arguments on the issues discussed above, we further find that the evidence supports the Commission's award of benefits to Sclafani.  Accordingly, we will affirm the judgment of the Court of Appeals upholding that award.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*

---

[6] It is further worth noting that there is no evidence in the record that indicates that Sclafani was injured as a result of these repeated actions.  The City relies on the fact that Sclafani's role in the training required him to repeatedly perform the same discrete actions throughout the day.  Specifically, it points out that he was repeatedly placed on the ground, handcuffed and then picked up.  As noted above, however, Sclafani was injured when he was "picked up a little weird" during the final scenario.  In other words, his injury occurred as a result of an action that was different from the others, i.e., a non-repeated action.