COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Willis and
          Senior Judge Overton
Argued at Alexandria, Virginia


ELLEN KAYE, INC. AND
 MONTGOMERY MUTUAL INSURANCE COMPANY
                                          OPINION BY
v.   Record No. 1427-00-4          JUDGE NELSON T. OVERTON
                                       FEBRUARY 27, 2001
THOMAS CLARKE WIGGLESWORTH


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              James Richard Ryan, Jr. (Susan A. Evans;
              Siciliano, Ellis, Dyer & Boccarosse, on
              brief), for appellants.

              John B. Delaney (Delaney, McCarthy, Colton &
              Botzin, P.C., on brief), for appellee.


     Ellen Kaye, Inc. and its insurer (hereinafter referred to

as "employer") appeal a decision of the Workers' Compensation

Commission awarding compensation to Thomas Clarke Wigglesworth

(claimant).  Employer contends the commission erred in

calculating claimant's average weekly wage as $793.45.  Finding

no error, we affirm.

     On appeal, we view the evidence in the light most favorable

to the prevailing party below.  See R.G. Moore Bldg. Corp. v.

Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

     So viewed, the evidence proved that claimant began

performing landscaping work for employer in the spring of 1987.

Beginning in November 1987, claimant worked for employer

installing Christmas decorations for various businesses. The Christmas decoration work normally began in November and ended in mid-January. From mid-January until October, claimant performed landscaping work for employer.

On January 24, 1995, claimant was laid off from his employment because employer eliminated its landscaping division and could not provide claimant with year-round work.

Claimant was not immediately able to find other work and, therefore, received unemployment compensation for two months. In April 1995, claimant found a job with another company performing landscaping work. At the end of October 1995, claimant received a letter from Howell Jewell, employer's executive vice-president and CEO, requesting that claimant return to work for employer installing seasonal Christmas decorations. As a result, claimant quit his job with his new employer.

On November 3, 1995, claimant began performing the Christmas decoration work for employer. Claimant was injured on December 15, 1995, when he fell off a roof as he was repairing a garland at a shopping center. For the seven-week period from November 3, 1995 through December 15, 1995, claimant earned $5,554.17 in wages from employer. On December 22, 1995, claimant received a payment of $392 from employer entitled, "bonus," with a net pay to him of $295.37, after deductions for taxes.

-

In determining that claimant's average weekly wage was $793.45, the commission found as follows:

> [C]laimant left the employer's employment at the end of January 1995 for another job because the employer left the landscaping business. He got a job with another employer, which resulted in a significant gap in employment with the defendant employer. The claimant quit this new job and returned to the defendant employer's decorating business in November 1995. When he returned to the employer, he began the seasonal decorating job. This job did not involve decorating during certain months and landscaping during others. The claimant worked for the employer only as a decorator when he was injured. This represented a separate and distinct employment with the defendant employer. Therefore, . . . the average weekly wage must be based on the claimant's earnings for the seven-week period prior to his injury because he planned to continue working at some other job after the seasonable [sic] job ended as opposed to not working after the job ended.

> Additionally, the employer paid the claimant an extra $392 on December 22, 1995. We are not persuaded that the $392 was a gift. While the claimant admitted that the employer was a friend, taxes were withheld from this payment. Clearly, the payment was paid pursuant to the employer/employee relationship. The Deputy Commissioner properly considered the amount as a bonus and incorporated it into the average weekly wage computation.

Employer argues that the commission "should have included all of the claimant's wages with [employer] in the fifty-two weeks prior to the date of accident." Employer asserts that this calculation would have required the commission to consider claimant's earnings with employer between December 31, 1994 and

-

January 28, 1995, combined with his earnings after October 1995
through the date of his injury on December 15, 1995.  Employer
also contends that the $392 paid to claimant on December 22,
1995, although labeled a "bonus," was actually a "gift" and
should not have been considered in determining claimant's
average weekly wage.  We disagree.

> It [is] the duty of the Commission to
> make the best possible estimate of future
> impairments of earnings from the evidence
> adduced at the hearing, and to determine the
> average weekly wage . . . .  This is a
> question of fact to be determined by the
> Commission which, if based on credible
> evidence, will not be disturbed on appeal.

Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339
S.E.2d 570, 573 (1986).

"The commission is guided by statute in determining average
weekly wage."  Dominion Assocs. Group, Inc. v. Queen, 17 Va.
App. 764, 766, 441 S.E.2d 45, 46 (1994).  Code § 65.2-101
defines "average weekly wage" as follows:

> 1.a.  The earnings of the injured employee
> in the employment in which he was working at
> the time of the injury during the period of
> fifty-two weeks immediately preceding the
> date of the injury, divided by fifty-two
> . . . .  When the employment prior to the
> injury extended over a period of less than
> fifty-two weeks, the method of dividing the
> earnings during that period by the number of
> weeks and parts thereof during which the
> employee earned wages shall be followed,
> provided that results fair and just to both
> parties will be thereby obtained. . . .
>
> b.  When for exceptional reasons the
> foregoing would be unfair either to the

-

> employer or employee, such other method of
> computing average weekly wages may be
> resorted to as will most nearly approximate
> the amount which the injured employee would
> be earning were it not for the injury.

(Emphasis added.)  "The reason for calculating the average weekly wage is to approximate the economic loss suffered by an employee . . . when there is a loss of earning capacity because of work-related injury . . . ."  Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987).

Here, the employment in which claimant was working at the time of his injury was seasonal Christmas decoration work, which he performed for seven weeks before his injury.  At that time, he had not worked for employer as a landscaper for over nine months, and employer was no longer in the landscaping business. Claimant quit his job with the other landscaping company and fully intended to pursue other employment once the seasonal Christmas decorating job with employer ended in January 1996. Under these circumstances, where the employment prior to the injury extended over a period of less than fifty-two weeks, the commission properly followed the method of dividing the earnings during that period by the number of weeks claimant worked.  See Code § 65.2-101(1)(a).

It was undisputed that claimant was employed as a seasonal Christmas decorator from November 3, 1995 through the date of his injury.  Uncontradicted and credible evidence also proved that during that time claimant earned a total of $5,554.17,

-

including his $392 bonus.  Therefore, the commission did not err in using the total of those wages divided by the seven weeks claimant worked for employer to determine that his "average weekly wage" was $793.45.

The commission properly included the $392 bonus in calculating claimant's average weekly wage.  The bonus was paid to claimant after employer made deductions for taxes.  The commission found, based on credible evidence, that the bonus constituted wages based upon the employer/employee relationship and was not a gift, notwithstanding Jewell's testimony to the contrary.

Because credible evidence supports the commission's findings, we affirm its decision.

<u>Affirmed.</u>

-