COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued in Richmond, Virginia

ALISSA M. THORPE, BENEFICIARY OF
  MATTHEW ALSON THORPE (DECEASED)

                                                            OPINION BY
v.         Record No. 1010-10-2                    JUDGE D. ARTHUR KELSEY
                                                        FEBRUARY 1, 2011

JOHN CLARY, t/a JMC WELDING,
  TED BOWLING CONSTRUCTION
  AND VIRGINIA SURETY COMPANY

             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                    Stephen T. Harper (Reinhardt & Harper, PLC, on brief), for
                    appellant.

                    Lynn McHale Fitzpatrick (Franklin & Prokopik, P.C., on
                    brief), for appellees Ted Bowling Construction and Virginia
                    Surety Company.

                    No brief or argument for appellee John Clary, t/a JMC
                    Welding.

       In this case, the claimant appeals the Workers' Compensation Commission's holding that

she failed to prove her deceased husband's average weekly wage was $2,500.  Finding no error

of law in the commission's reasoning or any irrationality in its factfinding, we affirm.

                                              I.

       We view the evidence on appeal in the light most favorable to "the prevailing party

before the commission." Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656 S.E.2d

431, 433 (2008).

       Matthew Alson Thorpe owned a self-storage facility and operated a side business known

as Alson's Ornamental Iron.  Eric McMahon worked for Alson's Ornamental Iron.  He and

Thorpe performed "residential ornamental iron work" which mostly involved constructing

railings on home porches.  App. at 48.  One of Thorpe's self-storage customers, John Clary,

asked Thorpe if he and McMahon would complete the construction of an unfinished metal building for a fixed sum of $5,000. Though neither Thorpe nor McMahon had done this work before, they agreed to take the job. Clary memorialized the contract by using soapstone to write $5,000 on a shop worktable.

"It was a slow time for [Thorpe's] work," McMahon testified, "We had a break between jobs." App. at 69. They agreed to Clary's fixed-price contract "[j]ust to keep busy, make some money." Id. Clary did not specify how the $5,000 would be divided between McMahon and Thorpe. Among themselves, however, McMahon and Thorpe agreed to split the sum equally. Clary said he wanted the job completed in one week but made clear the $5,000 would only be paid when the job was finished no matter how long it took.

Part of the job required Thorpe and McMahon to install metal roofing sheets. Shortly after starting the work, Thorpe fell through a skylight to his death. His widow, Alissa Thorpe, filed a claim for benefits asserting her husband was employed by Clary and sustained a fatal accident arising out of and in the course of that employment. She alleged Thorpe's $2,500 share of the $5,000 contract payment should be considered his "average weekly wage" under Code § 65.2-101.

After reviewing the evidence, a deputy commissioner wrote to counsel and advised that the evidentiary record was incomplete on the issue of Thorpe's average weekly wage. The deputy commissioner explained:

> I confess that though I have scoured the record to access all the information available to make a proper determination of the average weekly wage of Mr. Thorpe, pursuant to § 65.2-101, the evidence is limited. For that reason, I invite your input as to whether there needs to be a reconvening of the hearing for that limited issue, or, if both parties are in agreement that no further evidence should come into the record, for your position statements on the determination of the average weekly wage.

App. at 109. The claimant's counsel wrote back stating "no further evidence needs to be entered into evidence" and the matter should be addressed on the existing evidentiary record.

The deputy commissioner held the evidentiary record was too incomplete to justify the conclusion that the $2,500 payment on a one-time construction project (which might or might not have lasted a week) could be extrapolated into Thorpe's *average* weekly wage:

> Here the Commission is given no other wage guidance for Thorpe, no evidence of the weekly pay of [Clary's full-time employee], only that Thorpe and McMahon were to each receive $2,500.00 for the anticipated one week of work . . . . There is no evidence that Thorpe and/or McMahon were averaging $2,500.00 per week before the accident or that they would be, or had any expectancy of, so earning that the weeks following May 26, 2006.

Thorpe v. Clary, VWC No. 228-88-61, 2010 Va. Wrk. Comp. LEXIS 235, at *2-3 (Apr. 27, 2010) (quoting deputy commissioner's opinion). The claimant's argument, the deputy commissioner concluded, was factually insupportable:

> To isolate this one week's high pay (with the unusual hiring incentive circumstances surrounding it) and now deem that amount a realistic loss "were it not for the injury" is . . . exalting "some theoretical concept of loss of earning capacity" over "a realistic judgment on what the claimant's future loss is in the light of all the factors that are known."

Id. at *3. Rather than rejecting outright the claimant's evidence of lost wages, however, the deputy commissioner divided the $2,500 by 52 weeks and used the fraction as the decedent's average weekly wage.

The claimant appealed to the full commission. By a split vote, the commission agreed with the deputy commissioner. "Under the facts of this case," the commission concluded, "we believe that the sum of $2,500 does not accurately and fairly reflect the claimant's average weekly wage." Id. Applying its precedent involving a similar fact pattern, Bentley v. Cnty. of Tazewell, VWC No. 237-63-34, 2009 Va. Wrk. Comp. LEXIS 225 (2009), the commission explained its reasoning this way:

> There was no evidence within the record that the decedent had anticipated any further jobs from the employer. The decedent had never worked for the employer and had never attempted this particular type of work prior to beginning this job. The claimant may have had other employment; however, the record shows that this employment was dissimilar to the employment in which he was working at the time of his death and, thus, any earnings from that employment could not be used to calculate the average weekly wage.

Thorpe, 2010 Va. Wrk. Comp. LEXIS 235, at *7. The commission took note of the deputy commissioner's "unusual" but "perfectly reasonable" offer — which the claimant's counsel did not accept — to reopen the evidentiary record and supplement the factual presentation on the wage issue. Id. at *8.

A dissenting commissioner voted to reverse. As she viewed the evidence, the one-time payment of $2,500 could be deemed the average weekly wage Thorpe would have earned in the future had the accident not occurred.

## II.

Advocating the dissenting commissioner's reasoning, the claimant appeals seeking a reversal of the commission's decision and an order calculating the claimant's benefits using an average weekly wage of $2,500. We decline to do so.

We review questions of law *de novo* and independently determine the governing legal principles without deference to the decision under review. Spicer v. Va. Birth-Related Neurological Injury Comp. Program, 48 Va. App. 613, 618, 633 S.E.2d 732, 734 (2006) (reaffirming principle of *de novo* review of "pure questions of law"); Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 540 (2003) (stating we "do not consider ourselves 'bound by the legal determinations made by the commission'" (citation omitted)).

In contrast, we review questions of fact under the highest level of appellate deference. By statute, we treat the commission's factfinding as "conclusive and binding" if it rests on a

sufficient threshold of evidence. Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 749-50, 601 S.E.2d 693, 697 (2004) (quoting Code § 65.2-706(A)). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command," id. (citation omitted), that binds us so long as a "rational mind upon consideration of all the circumstances" could come to the conclusion the commission adopted, K&G Abatement Co. v. Keil, 38 Va. App. 744, 756, 568 S.E.2d 416, 422 (2002) (quoting Baggett Transp. Co. v. Dillon, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978)).

"Because we do not judge the credibility of witnesses or weigh the evidence on appeal, our personal view of the underlying factual debate plays no role in the task of appellate review." Clifton v. Clifton Cable Contr. LLC, 54 Va. App. 532, 541 n.2, 680 S.E.2d 348, 353 n.2 (2009) (citation and internal quotation marks omitted). It thus makes no difference that "we would have decided the fact[s] differently," Perry v. Delisle, 46 Va. App. 57, 67, 615 S.E.2d 492, 497 (2005) (*en banc*) (parenthetically quoting United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (citing Anderson v. Bessemer City, 470 U.S. 564, 573 (1985))), because the statute authorizes the commission to adopt whatever view of the evidence it considers "most consistent with reason and justice," Georgia-Pac. Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (citation omitted).

In this case, the parties do not dispute the governing legal principles. "Under the Virginia Workers' Compensation Act, awards of compensation benefits are based upon the average weekly wage." Dinwiddie Cnty. Sch. Bd. v. Cole, 258 Va. 430, 432, 520 S.E.2d 650, 651 (1999). "The commission is guided by statute in determining average weekly wage." Ellen Kaye, Inc. v. Wigglesworth, 34 Va. App. 390, 394, 542 S.E.2d 30, 32 (2001) (citation omitted). The statutory "guideposts" determine the methods "by which the commission may base its finding of average weekly wage." Meredith Constr. Co. v. Holcombe, 21 Va. App. 537, 539,

466 S.E.2d 108, 109 (1996). Unless the commission misconstrues the statute, the determination of an employee's "average weekly wage" constitutes a "question of fact" deserving of deferential appellate review. Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986).

Under Code § 65.2-101, calculating an employee's "average weekly wage" usually involves a simple equation: Take the employee's "earnings" over the "period of 52 weeks immediately preceding" the accident and divide that number by 52. Under this formula, the previous year's earnings with the employer are tallied and the "average weekly wage is then set at one fifty-second part of the average annual earnings so computed." 5 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 93.01[a] (2010).

"When the employment prior to the injury extended over a period of less than 52 weeks," the statute authorizes the division of the employee's earnings "by the number of weeks and parts thereof during which" he earned wages so long as "results fair and just to both parties will be thereby obtained." Code § 65.2-101. However, "if the statutory period designated by the first test happened to be an abnormal one, it is plainly not fair and reasonable to follow it slavishly, whether the wages for the period were abnormally high or abnormally low." 5 Larson, *supra*, § 93.01[e] (footnotes omitted). The real inquiry is whether the method produces a fair "approximation of claimant's probable future earning capacity." Id.

"If the first segment of the wage-basis test must be passed over, the next question is whether there can be found an employee of the same class who worked substantially the whole of the period." 5 Larson, *supra*, § 93.01[d]. If the employee does not have enough of an employment track record to run this formula, the commission should consider "the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality

or community." Code § 65.2-101; see Dominion Assocs. Grp. v. Queen, 17 Va. App. 764, 767, 441 S.E.2d 45, 47 (1994) (finding "no evidence in the record" regarding average weekly amount earned by similar employees in similar circumstances).

Finally, Code § 65.2-101 vests the commission with wide discretion to depart from these general guidelines when "exceptional reasons" would make the equation "unfair" either to the employer or employee. See, e.g., Queen, 17 Va. App. at 766, 441 S.E.2d at 46. If such reasons exist, the commission may use another "method of computing" the average weekly wage that "most nearly approximate[s] the amount which the injured employee would be earning were it not for the injury." Code § 65.2-101. The whole "reason for calculating the average weekly wage," after all, is to "approximate the economic loss" suffered by an employee or his beneficiaries. Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987).[1]

At every step in this tiered decisionmaking process, the burden of proof rests on the claimant. See, e.g., Uninsured Emp'rs Fund v. Thrush, 255 Va. 14, 20, 496 S.E.2d 57, 60 (1998) (noting that claimant "submitted no evidence to the Commission concerning the earnings of a person engaged in similar employment").[2] Upon the claimant alone rests the burden of producing evidence and persuading the factfinder by a preponderance of the evidence. See

---

[1] "The usual formulation speaks of a wage that fairly represents claimant's earning capacity. As the examples adduced throughout this discussion testify, there are almost an infinite number of variables that might figure in these cases, and, unspecific as this test is, it is much better than a technical test that methodically produces demonstrably inequitable results." 5 Larson, *supra*, § 93.01[e] (footnote omitted).

[2] The commission cited Thrush in direct support of its decision in this case, Thorpe, 2010 Va. Wrk. Comp. LEXIS 235, at *4, and the dissenting commissioner argued "[t]his case is distinguishable" from Thrush. Id. at *9 (Diamond, Comm'r, dissenting). Thrush held the claimant had proved his case only to the extent of the $42 a week accepted by the factfinder. We see no need to compare and contrast the dissimilar fact patterns of Thrush and this case. At best, Thrush supports the commission majority's reasoning — that both this case and Thrush stem from a claimant's failure to present his case — and, at worst, is merely factually distinguishable. At any rate, like the majority and dissenting commissioners, we do not read Thrush as supporting the claimant's argument.

Smith v. Smith, 32 Va. App. 242, 248, 527 S.E.2d 463, 466 (2000) (holding claimant must prove average weekly wage claim by a "preponderance of the evidence"). Nothing in the statute or our caselaw requires the employer to disprove the claimant's allegation of wage loss. Nor does the law permit the claimant to assume away the burden of proof by proffering an unsubstantiated wage figure and then remonstrating upon the employer's lack of refutation. See, e.g., Mount Vernon Builders, Inc. v. Rotty, 28 Va. App. 511, 516, 507 S.E.2d 95, 98 (1998) (reversing an average weekly wage calculation based on a side job when "[n]o evidence suggested that he intended to undertake other 'side jobs' or that other 'side jobs'" were available).

In this case, the claimant presented a single fact in support of the average-weekly-wage claim: Thorpe agreed to split equally a one-time $5,000 contract payment for a construction job that might or might not have lasted a week. It was uncontested, however, that Thorpe had never engaged in similar contracting in the past, and no evidence suggested he likely would in the future.[3] For these reasons, the commission found this one-time payment constituted an isolated event "that does not accurately and fairly reflect the claimant's *average* weekly wage." Thorpe, 2010 Va. Wrk. Comp. LEXIS 235, at *3 (emphasis added).

Given the paucity of the evidentiary record, the commission was well within its factfinding discretion to reject the claimant's allegation that Thorpe earned on average $2,500 a week during the year preceding the accident. The evidence thus falls short of satisfying the first tier of Code § 65.2-101, which takes the employee's earnings over the previous year and divides it by fifty-two weeks. The claimant also failed to show the aberrational weekly wage figure would be a "fair and just" approximation of future loss. Code § 65.2-101.[4] The commission

---

[3] Before the commission, claimant's counsel conceded earnings from Thorpe's business would not be relevant because it involved "dissimilar employment." App. at 117; cf. id. at 139.

[4] Our holding does not call into question the general principle that there is "nothing unfair about indulging a presumption that, having attained a good, steady, full-time job in a continuous

- 8 -

agreed with the deputy commissioner's view that this "one week's high pay (with the unusual hiring incentive circumstances surrounding it)" did not represent a "realistic judgment" of Thorpe's future loss. Equally so, the claimant presented no evidence establishing — under the second tier of statutory analysis — the wages earned by a "person of the same grade and character employed in the same class of employment in the same locality or community." Code § 65.2-101.

The inadequate factual presentation left the commission bereft of any reliable way to estimate Thorpe's average weekly wage. Relegated to the highly discretionary third tier of the Code § 65.2-101 definition of average weekly wage, the commission understandably chose not to adopt the *sui generis* $2,500 figure and extrapolate it as the average weekly wage Thorpe could expect to earn in the future. Nor did the commission think it proper to simply deny the claim outright on the ground that the claimant failed to prove her wage allegation by a preponderance of the evidence.

Instead, exercising its statutory power for "exceptional reasons," Code § 65.2-101, the commission took the $2,500 figure, divided it by 52, and awarded benefits accordingly. The commission's reasoning relied on straightforward logic: If the *only* reliable evidence of Thorpe's actual wage income during the year preceding the accident was this *one-time payment* of $2,500, and no evidence implied that similar payments occurred before the accident or would likely occur after it, then that figure was the only baseline the commission could reasonably consider.[5]

_____

kind of employment, a worker will maintain himself or herself at that level into the future." 5 Larson, *supra*, § 93.02[a]. But approximating future losses is the objective and "it sometimes is as important to reject as it is to accept a brief recent-wage experience, if a realistic approximation of future wage loss is to be obtained." Id. § 93.02[c].

[5] When asked at oral argument on appeal why he found it unnecessary to put on evidence of similar workers — even after the deputy commissioner invited additional evidence — the

Where, as here, the legislature "deliberately leaves a wide area of discretion" in determining an average weekly wage, this discretion should be applied "not mechanically nor technically, but flexibly, *with a view always to achieving the ultimate objective of reflecting fairly the claimant's probabl[e] future earning loss.*" 5 Larson, *supra*, § 93.01[c] (emphasis added). "The fact that the calculation of 'average weekly wage' is not intended to be automatic and rigidly arbitrary is evident from the various typical provisions for adjustment of actual wages received in order to achieve a figure which is fairly representative." Id. § 93.01[e]. The commission, therefore, rightly avoids "inexcusably rigidified interpretations of the wage formula" at the expense of "an honest approximation of claimant's probable future earning capacity." Id.

Truth be told, the sparse evidentiary record in this case forced the commission to "choose between two unrealistic choices." Oral Argument Audio at 3:02 to 3:06 (concession of claimant's counsel). The claimant, however, is in no position to find fault with the commission's unenviable choice. The claimant bore the burden of proving by a preponderance of the evidence Thorpe's average weekly wage. Because she failed to shoulder this burden, the commission did the best it could with the undeveloped state of the evidentiary record.

III.

Because the commission correctly applied Code § 65.2-101 and made factual findings supported by the evidence, we affirm.

Affirmed.

---

claimant's counsel explained "traditionally in Workers Comp. when we do that, we take other employees with the same employer" and not "comparable jobs . . . at other employers." Oral Argument Audio at 2:20 to 2:45. Neither the text of Code § 65.2-101 nor any of our opinions interpreting it, however, limits the comparable-jobs inquiry to other employees with the same employer.