UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Alston, Huff and Chafin
Argued at Alexandria, Virginia


MARIA D. SEMINARIO

MEMORANDUM OPINION[*] BY
v.        Record No. 0362-14-4              JUDGE ROSSIE D. ALSTON, JR.
                                            DECEMBER 9, 2014

FAIRFAX COUNTY PUBLIC SCHOOLS


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Benjamin J. Trichilo (McCandlish Lillard, on briefs), for appellant.

        Michael N. Salveson (G. Bethany Ingle; Littler Mendelson, P.C.,
        on brief), for appellee.


        Maria D. Seminario ("claimant") appeals a decision of the Workers' Compensation

Commission ("the commission") calculating her average weekly wage for periods of temporary

total disability by dividing her salary by 52 weeks instead of by the number of weeks she

actually worked as a teacher, excluding summer weeks.  On appeal, claimant contends that the

commission erred i) "by finding that the Claimant's average weekly wage should be calculated

by dividing by 52 weeks, instead of dividing by 43.143 weeks.  The ruling is contrary to the

plain language of the average weekly wage statute (Code § 65.2-101); is without precedent; and

materially understates the Claimant's average weekly earnings"; and ii) "erred because the

standard applied by the Commission is unsupported by statute and creates an invidious

discrimination against school teachers and school personnel, by utilizing an average wage

calculation that materially understates the compensation rate of this class of employees, when

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

compared to the standard applied for landscapers and seasonal workers." Finding no error, we affirm.

## I. Background[1]

On September 7, 2011, claimant, a 65-year-old teacher's assistant for Fairfax County Public Schools ("employer"), fractured her left wrist and injured her left shoulder, head, and knees when a student tripped her. Claimant earned an annual salary of $31,201.87 for teaching during the school year, or 43.143 weeks per calendar year. On March 28, 2012, claimant filed her claim for benefits seeking awards of lifetime medical benefits and temporary total disability benefits from September 8, 2011, through March 15, 2012. On April 26, 2012 employer and claimant entered an award agreement providing for claimant's compensation at the rate of $480.08 per week for her temporary total disability from September 8, 2011, through March 16, 2012. This weekly compensation rate was calculated by dividing the claimant's total earnings from employer for the year by 43 weeks, the number of weeks claimant worked for employer each year.

Employer filed a request for hearing on June 13, 2012, stating that the claimant's disability payments should have been calculated by dividing her pre-injury income by 52 weeks to arrive at an average weekly wage of $600.15 for a compensation rate of $400.10 per week. Employer sought a credit for any overpayment based on the calculated weekly wage of $480.08 provided in the agreed award.

At the hearing before the deputy commissioner on September 12, 2012, claimant testified that at the time of the work injury, she had been working full time during the school year and that her job required her to perform tasks such as lifting children, lifting boxes of books that weighed

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

over 5 pounds, and reaching above her head. Claimant stated that following her work injury, she was no longer able to perform those tasks because they caused her pain. Although claimant had the opportunity to seek summertime employment, she stated that after sustaining her injury she would not do so because she could not use her left hand. Claimant last worked during the summer approximately ten or eleven years prior to the hearing. Since then, claimant personally chose not to work summers for Fairfax County even though summer work was and is available to her if she chooses to work summers. Claimant did testify that she may seek summer work in the future, but that she was not looking for summer work at the time of the hearing.

The deputy commissioner issued his opinion on September 18, 2012, in which he determined that claimant's salary should be divided by 52 weeks because claimant chose not to seek employment during the summer months. Claimant requested review of the deputy commissioner's decision on October 11, 2012.[2]

By opinion dated January 28, 2014, the commission affirmed the deputy commissioner's September 18, 2012 opinion on the basis that claimant was not a seasonal employee and because she chose not to seek summer employment. The commission agreed that claimant's pre-injury average weekly wage should be calculated by dividing her annual earnings into 52 weeks. In reaching its decision, the commission compared claimant's case to that of Scott v. Virginia Beach (City of) School Board, 78 O.W.C. 199, 1999 Va. Wrk. Comp. LEXIS 510 (1999), a case in which a school bus driver did not work during the summer months and her average weekly wage was therefore calculated by dividing her earnings by 52 weeks. In Scott, the commission

_____

[2] Apparently "for reasons unknown" the matter was not docketed for review for over a year. In the interim, on September 19, 2012, November 8, 2012, February 27, 2013, and March 7, 2013, claimant filed additional claims for benefits in which she sought medical authorizations and ongoing temporary total disability benefits beginning March 5, 2013. On April 25, 2013, the deputy commissioner held a hearing on claimant's additional claims for benefits and on May 13, 2013, the deputy commissioner awarded claimant ongoing temporary total wage loss benefits of $400.03 per week beginning March 5, 2013, based on a pre-injury average weekly wage of $600.04.

based its decision on the claimant's choice not to work during the summer break. Since the claimant in the present case also chose not to work during the summer months, the commission calculated her average weekly wage as it had in Scott—by dividing her earnings by 52 weeks. This appeal followed.

## II. Analysis

The fundamental purpose of the Workers' Compensation Act (the "Act") is to compensate employees for injuries "arising out of and in the course of employment . . . without regard to fault." Lawrence J. Pascal, Virginia Workers' Compensation: Law & Practice § 1.03 (4th ed. 2011). "'It is as essential to industry as it is to labor.'" Id. (quoting Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946)).

> "[I]t [is] the duty of the Commission to make the best possible estimate of future impairments of earnings from the evidence adduced at the hearing, and to determine the average weekly wage that [the claimant] was able to earn. This is a question of fact to be determined by the Commission which, if based on credible evidence, will not be disturbed on appeal."

Chesapeake Bay Seafood House v. Clements, 14 Va. App. 143, 146, 415 S.E.2d 864, 866 (1992) (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986)). "Thus, if credible evidence supports the commission's findings regarding a claimant's average weekly wage, we must uphold those findings." Id. (citing James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989)). "'The commission is guided by statute in determining average weekly wage.'" Thorpe v. Clary, 57 Va. App. 617, 624, 704 S.E.2d 611, 614 (2011) (quoting Ellen Kaye, Inc. v. Wigglesworth, 34 Va. App. 390, 394, 542 S.E.2d 30, 32 (2001)). "Unless the commission misconstrues the statute, the determination of an employee's 'average weekly wage' constitutes a 'question of fact' deserving of deferential appellate review." Id. (citing Pilot Freight Carriers, Inc., 1 Va. App. at 441, 339 S.E.2d at 573). However, to the extent the calculation of the average weekly wage is based on statutory

interpretation, it presents a question of law and is subject to *de novo* review by this Court.  See

Turf Care, Inc. v. Henson, 51 Va. App. 318, 334, 657 S.E.2d 787, 794 (2008).

The Code assists the commission in determining an injured claimant's average weekly

wage.  Code § 65.2-500(A) provides, in part:

> Except as provided in subsections E, F and G, when the incapacity
> for work resulting from the injury is total, the employer shall pay,
> or cause to be paid, as hereinafter provided, to the injured
> employee during such total incapacity, a weekly compensation
> equal to 66 2/3 percent of his average weekly wages, with a
> minimum not less than 25 percent and a maximum of not more
> than 100 percent of the average weekly wage of the
> Commonwealth as defined herein.  In any event, income benefits
> shall not exceed the average weekly wage of the injured employee.

Code § 65.2-101 provides, in relevant part:

> "Average weekly wage" means:
>
> 1. a.  The earnings of the injured employee in the employment in
> which he was working at the time of the injury during the period of
> 52 weeks immediately preceding the date of the injury, divided by
> 52; but if the injured employee lost more than seven consecutive
> calendar days during such period, although not in the same week,
> then the earnings for the remainder of the 52 weeks shall be
> divided by the number of weeks remaining after the time so lost
> has been deducted.  When the employment prior to the injury
> extended over a period of less than 52 weeks, the method of
> dividing the earnings during that period by the number of weeks
> and parts thereof during which the employee earned wages shall be
> followed, provided that results fair and just to both parties will be
> thereby obtained.
>
> b.  When for exceptional reasons the foregoing would be unfair
> either to the employer or employee, such other method of
> computing average weekly wages may be resorted to as will most
> nearly approximate the amount which the injured employee would
> be earning were it not for the injury.

"The reason for calculating the average weekly wage is to approximate the *economic loss*

suffered by an employee . . . when there is a loss of earning capacity because of work-related

injury or death."  Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163, 355 S.E.2d 339, 340

- 5 -

(1987) (citations omitted).  To achieve this purpose, the Act gives the commission discretion in the calculation method used to determine the average weekly wage.  Goodyear Tire & Rubber Co. v. Mendenall, Record No. 2905-08-3, 2009 Va. App. LEXIS 401, at *4 (Va. Ct. App. Sept. 8, 2009).[3]

The Court highlighted the purpose of calculating average weekly wage to approximate economic loss in the unpublished opinion, Goodyear Tire, where claimant suffered a compensable injury by accident to his left shoulder.  Id. at *1.  In the 52-week period preceding claimant's injury, claimant participated in a twelve-week union strike against employer in which he received no pay and took three weeks of unpaid vacation.  Id.  The commission concluded that the strike and unpaid vacation weeks should be excluded from the calculation of claimant's average weekly wage.  Id.  The Court affirmed, stating that "in decreasing the number of weeks used for the calculation, the commission is not compensating the employee for 'lost' time, but rather best approximating what the employee would be earning were it not for his injury by excluding time not worked that might be considered an aberration."  Id. at *4.  The Court considered the twelve weeks claimant was on strike as "lost" time under Code § 65.2-101(A) because, absent the "aberration" of the union strike, claimant would have been working during that time.  Id.

The Court's holding in Goodyear emphasized that the calculation of a claimant's average weekly wage is not meant to compensate a claimant for loss of earning capacity, *but rather to provide compensation for actual economic loss suffered as the result of a workplace injury*.  The salient issue in the present case is how this purpose is served and through which method of calculation under Code § 65.2-101(A) as applied to school system employees who work during

---

[3] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value."  Otey v. Commonwealth, 61 Va. App. 346, 350, 735 S.E.2d 255, 257 (2012) (citing Rule 5A:1(f)).

the school year and choose not to accept other work opportunities during the summer weeks when school is not in regular session.

Though not binding on this Court, the commission addressed calculation of a school bus driver's average weekly wage, where she worked during the school year but not over the summer, in Scott, 1999 Va. Wrk. Comp. LEXIS 510. The commission determined that claimant's average weekly wage should be calculated by dividing her pay into 52 weeks. In so holding, the commission noted that

> During the summer vacation period, the claimant elected not to work. Therefore, her situation is not like that of a seasonal worker who obtains other employment during the off-season. . . . [H]ere the claimant's job constituted full-time employment for her. If the compensation rate in this case were to be based on 42.2 weeks, her compensation benefits for 12 months would exceed her income from working as a school bus driver as received over 12 months. Such a result would not approximate the claimant's loss of income from her job and would unfairly award her higher earnings than a comparable co-worker who suffered a similar injury.

Id. at *3.

We find the commission's rationale in Scott persuasive to this fact-driven case and find that the commission properly calculated claimant's average weekly wage by dividing her salary by 52 weeks. We are mindful that school teachers perform a "vitally important public function," and we do not underestimate the contributions they make throughout the school year to the growth and development of the youth in this Commonwealth and across the country, regardless of whether or not they seek work over the summer. See Lentz v. Morris, 236 Va. 78, 82, 372 S.E.2d 608, 610 (1988). However, on the facts of this case, claimant, much like the bus driver in Scott, chose to work during the school year and not during the summer months. She had not sought work over the summer, though it was available to her, for over a decade. Additionally, claimant admitted that she would not be looking for summer work in the foreseeable future.

Claimant's school year employment, much like the claimant in <u>Scott</u>, "constituted full-time employment for her." 1999 Va. Wrk. Comp. LEXIS 510, at *3. Further, the summer months were not an "aberration" for claimant, as the weeks spent on union strike were for the claimant in <u>Goodyear</u> and thus, her summer months were not "lost" time as contemplated by Code § 65.2-500(A). Finally, claimant is not under-compensated by dividing her salary by 52 weeks; she will receive approximately 66 2/3% of her pre-injury average weekly wage, to which she is entitled.[4] On the facts of this case, claimant's actual loss resulting from her injury is most accurately calculated by dividing her annual salary by 52 weeks and, therefore, we find that the commission did not err in so finding.

<u>Affirmed.</u>

---

[4] Claimant's average weekly pay, however, calculated by dividing her salary by 43 weeks, would result in her earning approximately eighty percent of her annual salary over the course of a year of disability payments. While still within the upper compensation limit of Code § 65.2-500(A) (not less than twenty-five percent and not more than one hundred percent of the average weekly wage of the Commonwealth), employing claimant's preferred calculation would, from a workers' compensation perspective, unnecessarily lead to her over-compensation, when calculating her average weekly pay according to the weeks she actually worked during the year (as the commission did) compensates her precisely as provided by Code § 65.2-500(A).