COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Russell and AtLee
Argued by videoconference


DANIEL JOHNSTON

MEMORANDUM OPINION* BY
v.        Record No. 0327-20-4           JUDGE ROBERT J. HUMPHREYS
OCTOBER 6, 2020

ECHL PERSONNEL MANAGEMENT
 OF NEW JERSEY AND GREAT DIVIDE INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Benjamin T. Boscolo (Casey Duchesne; Chasen Boscolo, on brief),
for appellant.

Benjamin J. Trichilo (McCandlish Lillard, P.C., on brief), for
appellees.


Beginning May 28, 2018, Daniel Johnston ("Johnston") filed multiple claims for

workers' compensation benefits based on an injury he suffered while playing hockey for the

Norfolk Admirals in the East Coast Hockey League ("ECHL").  Johnston was temporarily and

totally disabled from November 10, 2017, through January 15, 2019, and was awarded $260.75

per week based on an average seasonal weekly wage of $386.06.

Although Johnston argued that he continued to be totally disabled after January 15, 2019,

the Virginia Workers' Compensation Commission ("the Commission") found that he was

partially disabled and consequently, was required to market his residual work capacity.  The

Commission found that there was no evidence of marketing residual capacity, and thus, Johnston

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

was not entitled to temporary total disability benefits starting on January 16, 2019. The Commission also found that Johnston's average weekly wage was properly calculated.

On appeal, Johnston argues the Commission erred in finding his average weekly wage was $386.06 and that Johnston failed to adequately market his residual earning capacity. Additionally, Johnston challenges the refusal of the full Commission to review the deputy commissioner's denial of benefits on the basis that Johnston had returned to Canada.

## I. BACKGROUND

On November 10, 2017, Johnston suffered an injury to his left knee while playing professional hockey in the ECHL. Johnston filed multiple applications for workers' compensation benefits and sought temporary total disability benefits from November 10, 2017, and continuing. The parties stipulated that Johnston was an employee of ECHL and that Johnston injured his left leg during a hockey game.

After multiple surgeries in 2017 and 2018, Dr. Charles B. Jackson ("Dr. Jackson") evaluated Johnston's functional ability. On January 15, 2019, Dr. Jackson opined that Johnston should return to "productive vocation in the form of sedentary to light duty work." Although Dr. Jackson recommended certain physical restrictions, including use of caution in lifting more than fifty pounds, Dr. Jackson recommended that Johnston "stress" his knee "beyond the point of discomfort but cut back with progressive discomfort and/or prolonged discomfort after activities at the gym or at work." Stressing his knee would help Johnston "get mobility and strength back."

On April 16, 2019, vocational expert H. Gray Broughton ("Broughton") evaluated Johnston's functional capacity. He noted that Johnston was twenty-six years old and resided in Calgary, Alberta, Canada, where he was born. He also noted that Johnston graduated from high school in 2010 and was pursuing his Bachelor of Commerce. Johnston did not have any reported

work history outside of hockey. Broughton also stated that Johnston had not made any effort to find other employment, nor did he plan to do so. Broughton related that appropriate light-duty work was available in Calgary and that Johnston could earn the same amount or more than he did as a professional hockey player. Broughton stated, "Johnston is employable and placeable in full time gainful employment on a sustained basis that is within his Residual Functional Capacity. He has not marketed himself in [t]he current local Labor Market for suitable and appropriate light duty work."

On April 23, 2019, the parties deposed Johnston's treating physician, Dr. Stephen French ("Dr. French"). Dr. French testified that Johnston clearly stated that he wanted "to pursue his physiotherapy on a full-time basis" and that "part-time sedentary employment would be a distraction for him in focusing on his rehabilitation." Dr. French also testified that he had not performed a functional capacity evaluation, nor was he qualified to do so. Dr. French testified that he told Johnston that Johnston should engage in six to eight hours of rehabilitation per day.

On May 8, 2019, at a hearing before the deputy commissioner, Johnston testified that he was attending school online and that his professional athlete visa to work in the United States expired in June 2018. He did not renew the visa. Johnston testified he was paid $675 per week, plus his housing, medical, gym, and equipment expenses. Johnston also stated that when he was away from his home city, he received a forty-two dollar per diem for food and otherwise was provided daily breakfast and lunch at the ice rink.

At the same hearing, Johnston stated that physical rehabilitation "is my work" and testified to doing physical therapy three or four days a week and strength and conditioning six days a week. He spent about four to five hours a day in rehabilitation activities. When asked if he was currently looking for work, Johnston responded that he was doing physical therapy so that he could play hockey next season. As a seasonal worker, the maximum amount Johnston

made during his hockey career was $20,075 per year in reportable income. The hockey season ran from October until April.

On October 7, 2019, the deputy commissioner found that Johnston was totally disabled from November 10, 2017, until January 15, 2019, and partially disabled starting January 16, 2019. The deputy commissioner awarded "$260.75 per week during temporary total disability, based on an average weekly wage of $386.06, beginning November 10, 2017 through January 15, 2019, inclusive" and did not award compensation after January 15, 2019. The deputy commissioner also found that Code § 65.2-502 barred an award of compensation after January 15, 2019, because Johnston had moved back to Canada and was consequently "not eligible for lawful employment" under the statute. Johnston requested review by the Commission.

On January 27, 2020, the Commission determined that there was no error in calculating Johnston's pre-injury average weekly wage. The Commission stated, "Here, the claimant earned $20,075.27 as a hockey player in the fifty-two weeks preceding his injury. There is not sufficient evidence to show the claimant actively sought or obtained other work during off-season periods prior to his injury." The Commission specified that for seasonal workers who do not look for full-time employment, compensation is not based on actual weekly earnings during the season of employment, otherwise the employee would make a windfall. Therefore, instead of dividing Johnston's salary by the number of weeks in the hockey season, the Commission found that the salary should be divided by the number of weeks in a year. According to the Commission, this "method of calculation best approximates the economic loss suffered by the claimant due to his injury."

The Commission also refused to consider Johnston's "allowances" in determining his average weekly wage. Because Johnston failed to provide "any testimony or evidence to address whether he received the per diem regardless of his actual expenses and that he was not required

- 4 -

to account for his expense," the Commission did not consider his per diem. The Commission did not consider other benefits because "the claimant failed to prove the value of these perquisites by a preponderance of the evidence. There is no evidence in the record to support a determination of their values."

Regarding disability after January 15, 2019, the Commission found that Johnston was partially disabled and therefore obligated to market his residual capacity, consistent with this Court's decision in Hamilton v. Pro-Football, Inc., 69 Va. App. 718 (2019). Although Johnston was participating in intensive training, the Commission noted that "the record fails to sufficiently establish the claimant's prognosis of a full recovery prior to the next season, and, most significantly, does not reflect involvement of the employer's agents in his rehabilitation process." It also found significant the fact that Johnston was still able to take online courses during his rehabilitation. The Commission relied on Dr. Jackson's January 15, 2019 report, which "establishes that [Johnston] was able to perform light to sedentary duty beginning January 16, 2019." After determining that Johnston had a duty to market his residual work capacity, the Commission found that there was no evidence he did so. Because Johnston was required to market and did not do so, the Commission refused to award temporary total disability benefits beginning January 16, 2019.

Finally, the Commission specified that it would not reach the issue of whether Johnston was eligible for benefits under Code § 65.2-502 because Johnston did not market his residual capacity. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"Decisions of the [C]ommission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Advance Auto v. Craft, 63 Va. App. 502, 520 (2014)

(quoting Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 238 (2012)). When reviewing the Commission's decisions, "this Court views the evidence in the light most favorable to [ECHL] as the prevailing party before the [C]ommission." Id. "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the [C]ommission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Id. (quoting Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 408 (2004)). "However, the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." Shy, 61 Va. App. at 238 (quoting Wainwright v. Newport News Shipbuilding & Dry Dock Co., 50 Va. App. 421, 430 (2007)).

### B. Johnston's Average Weekly Wage

"Unless the [C]ommission misconstrues the statute, the determination of an employee's 'average weekly wage' constitutes a 'question of fact' deserving of deferential appellate review." Thorpe v. Clary, 57 Va. App. 617, 624 (2011); see also Ellen Kaye, Inc. v. Wigglesworth, 34 Va. App. 390, 394 (2001) (stating that the determination of average weekly wage "is a question of fact to be determined by the Commission which, if based on credible evidence, will not be disturbed on appeal" (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441 (1986))). The calculation of average weekly wage aims to "approximate the *economic loss* suffered by an employee . . . when there is a loss of earning capacity because of work-related injury." Wigglesworth, 34 Va. App. at 395 (quoting Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163 (1987)). The claimant bears the burden of proof to show his average weekly wage by a preponderance of the evidence. See Thorpe, 57 Va. App. at 626.

The Commission bases its determination of average weekly wage on statutory "guideposts." Id. at 624. Under the Virginia Workers' Compensation Act, average weekly wage is "[t]he earnings of the injured employee in the employment in which he was working at the

time of the injury during the period of 52 weeks immediately preceding the date of the injury, divided by 52." Code § 65.2-101(1)(a). However, "[w]hen the employment prior to the injury extended over a period of less than 52 weeks," average weekly wage is determined by "dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages" as long as this method results in an award that is "fair and just to both parties." Id. In any event, when there are "exceptional reasons" that the injured employee's average weekly wage as calculated under Code § 65.2-101(1)(a) "would be unfair either to the employer or employee," the Commission can use "such other method of computing average weekly wages . . . as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." Code § 65.2-101(1)(b); see also Jones v. Pro-Football, Inc., 69 Va. App. 732, 745 (2019) (explaining that Code § 65.2-101 "vests the Commission 'with wide discretion to depart from these general guidelines when "exceptional reasons" would make the equation "unfair" either to the employer or employee'" (quoting Thorpe, 57 Va. App. at 625)).

Johnston first argues that in determining his average weekly wage, the Commission should have divided his salary by the number of weeks in the hockey season, rather than using a 52-week divisor. Under this formula, Johnston argues that he was entitled to $675 per week, rather than $386.06. However, the Commission found that Johnston's salary was properly divided by 52 because using the number of weeks he worked was not an accurate approximation of the amount he would be earning if he had not been injured. The record contains evidence to support the Commission's award.

During the hockey season, which ran from October until April, Johnston testified that he earned $20,075.26. He did not seek or obtain other work during the off-season before his injury, as evidenced by his work history. Therefore, during a 52-week period, he would have expected

to make $20,075.26 since his seasonal employment was his only anticipated income. The Commission's calculations were correct as $20,075.26 divided by 52 weeks is $386.06. Since a calculation of average weekly wage that used the number of weeks Johnston worked would be unjust to his employer, the Commission properly construed Code § 65.2-101(1)(b) and did not err in using a 52-week divisor.

Next, Johnston argues that the Commission should have included allowances in calculating his average weekly wage. Under Code § 65.2-101, "[w]henever allowances of any character made to an employee *in lieu of wages* are a specified part of the wage contract, they shall be deemed a part of his earnings." Code § 65.2-101(2) (emphasis added). In other words, allowances are included in the determination of average weekly wage "if the allowance meets two conditions: first, the allowance must be specifically provided for in the contract of employment, and, second, the allowance must be of such character as to indicate that it is paid 'in lieu of wages.'" Bosworth, 4 Va. App. at 163. To be considered "in lieu of wages," an allowance must constitute "an economic gain" to the employee rather than be a reimbursement for expenditures made pursuant to his employment. Id. at 163-64.

In this case, Johnston testified that he received housing, medical coverage, a gym membership, equipment, a forty-two dollar per diem, and coverage of his travel expenses. However, Johnston did not present any evidence on the issue of whether these allowances were provided in lieu of wages. The Commission properly recognized that Johnston did not provide "any testimony or evidence to address whether he received the per diem regardless of his actual expenses and that he was not required to account for his expense." Additionally, Johnston failed to carry his burden of proving the value of other allowances besides his per diem. Since there was no evidence of the value of these allowances, the Commission could not have considered

them even if Johnston had shown they constituted an economic gain. For these reasons, the Commission did not err in determining Johnston's average weekly wage.

## C. Marketing Residual Capacity

Whether an employee has made a reasonable effort to market his residual capacity is a factual determination by which this Court is bound if supported by credible evidence in the record. See Hamilton v. Pro-Football, Inc., 69 Va. App. 718, 727 (2019). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the [C]ommission." Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 270 (1989).

An employee who is partially incapacitated cannot receive a temporary total disability award "unless he has made a reasonable effort to market his remaining capacity for work." White v. Redman Corp., 41 Va. App. 287, 292 (2003). "There are no fixed guidelines for determining what constitutes a 'reasonable effort' by an employee to market residual work capacity." Ford Motor Co. v. Favinger, 275 Va. 83, 89 (2008). Instead, courts consider the question on a "case by case basis" and consider both facts and surrounding circumstances. Id. at 89-90. Some factors that this Court considers are:

> the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Id. at 90 (quoting McGuinn, 8 Va. App. at 272).

- 9 -

Johnston first argues that he was not under a duty to market his residual capacity because he remained totally disabled,[1] not partially disabled. A workers' compensation claimant "bears the burden of proving his disability." Vital Link, Inc. v. Hope, 69 Va. App. 43, 64 (2018). In examining the sufficiency of the evidence, this Court does not assess "the credibility of witnesses or weigh the evidence on appeal." Celanese Fibers Co. v. Johnson, 229 Va. 117, 121 (1985).

Here, there was evidence, in the form of a functional capacity evaluation, that Johnston was only partially disabled starting on January 16, 2019. On January 15, 2019, Dr. Jackson opined that Johnston should engage in "sedentary to light duty work" in order to stress and strengthen his knee. The Commission found Dr. Jackson credible. While Johnston seems to claim that the Commission should have put more weight on Dr. French's testimony,[2] this Court does not reassess credibility. Because there was evidence that Johnston was able to work, he was under a duty to market his residual capacity. See Hamilton, 69 Va. App. at 727 (explaining that when an employee is only partially disabled, he must adequately market his residual capacity "as a precondition to receiving" workers' compensation benefits).

Johnston also argues that he was temporarily and totally disabled, relying on this Court's decision in Hamilton. While that case is controlling, it undercuts Johnston's position. In Hamilton, this Court found that a football player did not adequately market his residual capacity because he made no effort to market his residual capacity. Id. at 721, 729. This Court noted that

---

[1] Older caselaw defines total incapacity as "unemployable in gainful employment." Great N. Nekoosa v. Wood, 37 Va. App. 54, 60 (2001). However, this caselaw was decided under a previous version of the Workers' Compensation Act. The latest version does not define total or partial incapacity. See Code § 65.2-500 (compensation for total incapacity); Code § 65.2-502 (compensation for partial incapacity).

[2] Dr. French operated on Johnston's knee on October 19, 2018. His office mailed a return-to-work "form letter" to Johnston on February 5, 2019 stating he would be able to return to sedentary work three months post-surgery. During his April 23, 2019 deposition, Dr. French testified that the report was autogenerated by his office, Dr. French neither personally saw nor signed the report, and it was not based on a post-operative physical examination of Johnston.

Hamilton was able to travel among different states and had a college degree. Id. at 728. While disabled, Hamilton completed a three-week unpaid internship and engaged in physical rehabilitation. Id. at 728-29. Although he did engage in some networking, he did not apply for any jobs and acknowledged that he was not actively looking for work. Id. at 729. Hamilton claimed that he was being punished for trying to continue as a professional athlete, but this Court held that the Commission merely found his failure to market unreasonable and affirmed the denial of temporary total disability benefits. Id. at 731-32.

Similarly, in this case, Johnston made no effort to market his residual capacity. According to Broughton's report, Johnston was employable in light-duty work, but refused to pursue any work. In fact, Johnston himself testified that he was not pursuing work because rehabilitation was his "work." Yet, Johnston continued to attend school online, evidencing both time and ability to engage in sedentary work. Like the claimant in Hamilton, Johnston participated in intensive training, to the exclusion of pursuing other employment despite having the capacity to do so. On brief, Johnston criticizes the Commission's statement that "the record fails to sufficiently establish the claimant's prognosis of a full recovery prior to the next season, and, most significantly, does not reflect involvement of the employer's agents in his rehabilitation process." By so stating, the Commission merely noted that Johnston's failure to market was unreasonable, considering that ECHL was not attempting to help him recover so that he could play hockey again during the next season. See Hamilton, 69 Va. App. at 731 (explaining that the Commission found the failure to market unreasonable in part because rehabilitation was not shown to be "so time consuming that it prevented [the football player] from simultaneously seeking and working in other employment").

For these reasons, the Commission did not err.

D.  Commission's Refusal to Review Deputy Commissioner's Denial of Benefits

Finally, Johnston asks this Court to remand the case and order the Commission to consider the deputy commissioner's denial of benefits based on the finding that benefits were barred by Code § 65.2-502.  However, in a footnote of its decision, the Commission specified that it would not reach the issue of whether Johnston was eligible for benefits under Code § 65.2-502 because Johnston did not market his residual capacity.  An employee who is only partially disabled must market his residual capacity in order to receive benefits.  See id. at 727. Therefore, the Commission would be merely rendering an advisory opinion by reaching the issue when marketing residual capacity was already outcome determinative of the case.  See Va. Dept. of State Police v. Elliott, 48 Va. App. 551, 553 (2006) ("Advisory opinions represent an attenuate exercise of judicial power, one in which the Virginia judiciary 'traditionally declines to participate.'" (quoting Commonwealth v. Harley, 256 Va. 216, 219-20 (1998))).  The Commission properly refused to reach an issue that would have no effect on the outcome of the case.

Additionally, Virginia courts do not opine on "moot questions or abstract propositions" nor do they "declare principles or rules of law which cannot affect the matter in issue in the case before it."  Id. at 554 (quoting Hankins v. Town of Virginia Beach, 182 Va. 642, 644 (1944)). Since this Court has already found that the Commission properly determined Johnston did not market his residual capacity, to further examine whether the benefits were barred for another reason would be to render an advisory opinion.

Further, it is clear from the substance of Johnston's arguments on brief that he requests this Court to reach the merits of the deputy commissioner's reason for denying benefits.  "Any aggrieved party may appeal to the Court of Appeals from . . . [a]ny final decision of the Virginia Workers' Compensation Commission."  Code § 17.1-405.  "Thus, our review extends only to the

Commission's ruling, not the opinion reached by the deputy commissioner." <u>Anderson v. Anderson</u>, 65 Va. App. 354, 357 n.1 (2015).

III.  <u>CONCLUSION</u>

The Commission did not err in determining Johnston's average weekly wage or in finding that he failed to market his residual capacity.  Further, any allegation of error by the deputy commissioner is not reviewable by this Court.  For the reasons stated above, we affirm the judgment of the Commission.

<u>Affirmed.</u>